## Wytheville.

## Owens v. Owens.

### June 30, 1898.

Absent, Cardwell, J.

1. HUSBAND AND WIFE—*Parent and Child—Duty of Support—Alimony.*—A husband and father is bound to support his wife and children, and if, by his misconduct, he renders it impossible for them to remain under his roof, he cannot, by his misconduct, escape the performance of the duty which the law imposes upon him.

2. HUSBAND AND WIFE—*Divorce—Condonation.*—Condonation is the remission by one of the married parties of an offence known to have been committed by the other against the marriage, on the condition of being continually afterwards treated by the other with conjugal kindness. While the condition remains unbroken, there can be no divorce, but a breach of the condition revives the original remedy.

3. HUSBAND AND WIFE—*Divorce—Cruelty—Condonation.*—Cruelty consists of successive acts of ill-treatment, if not of personal injury; so that something of a condonation of earlier ill-treatment must, in such cases, necessarily take place. It is cumulative, admitting of degrees and augmenting by addition. It may be condoned and even forgiven for a time and up to a certain point, without barring the right to bring it all forward when the continuance of it has rendered it no longer condonable.

4. HUSBAND AND WIFE—*Divorce—Cruelty—Condonation.*—While acts of violence, on the part of a husband, which have been condoned cannot be made the sole foundation for a divorce, they form the subject of investigation and proof in order to determine whether the wife can with safety to her person and health, continue to live with him.

5. HUSBAND AND WIFE—*Divorce—Cruelty—Charge of Adultery.*—A malicious charge of adultery made by one consort against the other, standing absolutely alone, is not sufficient to justify a divorce, but, when presented with other facts enhancing its enormity, is an act of gross cruelty. The evidence in the case in judgment establishes a plain case of cruelty and reasonable apprehension of bodily hurt.

6. HUSBAND AND WIFE—*Divorce—Custody of Children.*—The innocent parent on whose prayer a divorce is granted is usually entitled to the custody of the children. A woman compelled by her husband to re-sort to a divorce ought not to obtain it at the expense of losing the society of her children; and as one who has done well or ill in the marriage relation will be likely to do the same in the parental, all courts lean to the innocent parent when determining the custody of the child.

Appeal from a decree of the Circuit Court of Scott county pronounced September 4, 1896, in a suit in chancery wherein the appellee was the complainant, and the appellant was the defendant.

*Affirmed.*

The opinion states the case.

*H. S. K. Morrison* and *R. R. Kane,* for the appellant.

*Ewing & Richmond,* for the appellee.

KEITH, P., delivered the opinion of the court.

Sarah D. Owens, by her next friend, filed a bill for divorce in the Circuit Court of Scott county, in which she states that she is the wife of Berry C. Owens, and that seven children have been born of their marriage, five of whom are now liv-ing, the three youngest being seven, five, and two years old, respectively, at the institution of this suit. She states that she is in poor health, is unable to support herself and children, and has no means to do so; that she has been a true, virtuous, and kind wife, and has used every endeavor to live with her husband in peace, but her husband, for several years past, has been cruel and inhumanly abusive in his treatment to her, because insanely jealous, without the semblance of a cause; that he has denied the paternity of his own children, refused to pro-vide proper provision for them, either in food or clothing, has

driven them from home, and that she and they are now dependent upon others for the necessaries of life. Among the acts of cruelty which she recites, is that he refused to permit her to occupy her own bed in cold weather, but forced her to lie upon the floor; that he has more than once driven her from home with her children, and compelled her to seek protection from her friends; that she has more than once returned upon the promise of better treatment, but that his promises were not kept, and that recently his conduct has been more than could be borne; that he has denounced their children as bastards, and locked the door of his house upon his wife, and that his treatment has reached such a degree of unkindness that she is afraid of personal violence at his hands, and that he has so threatened and abused her that she no longer feels that it is safe to cohabit or live with him. She states that the charges brought against her of inconstancy are utterly false; that no breath of suspicion exists against her chastity, save in the breast of her husband, and declares that he is not a suitable person to have the custody of their children.

The prayer of the bill is that the plaintiff may have a divorce from bed and board, and that she may be granted alimony, and the custody of their three youngest children.

The husband appeared and demurred to this bill, and we have stated its averments as a complete vindication of the decree of the Circuit Court in overruling his demurrer.

His answer denies the allegations of the bill. He admits that he may have sometimes been hasty and inconsiderate, but declares that there has never existed any purpose upon his part to harass or harm the plaintiff in any way. He avers that he has always provided for her a comfortable maintenance, plain, but wholesome food, and in sufficient quantity, and clothing suitable to their means and station in life.

There is evidence proving that his wife is in delicate health, that her lungs are affected, and that she is frequently subject to hemorrhages and spitting of blood. It is proved that on

one occasion, at least, he jerked her violently out of bed, and that he compelled her to sleep upon the floor, and when remonstrated with, said: "It is quite good enough for her"; that he accused her of inconstancy and denounced their children as bastards, and their oldest son, a youth of 18 years of age, says that "his treatment has been cruel and inhuman, and I would not think it safe for her to live with him any more; and that he forced her on one occasion to leave home when their youngest child was but three weeks old."

There is much evidence tending to prove harsh and unkind conduct on his part, and neighbors and friends have frequently found the wife in tears as a consequence of his treatment, and her sister swears that, from all that she has seen and heard, she does not consider it safe for the plaintiff any longer to cohabit with her husband. He admitted to her father that he had driven her from home, and the father testifies to a very striking and touching incident which sheds light upon the relations that existed between the appellant and his family. When Mrs. Owens left her husband's home with her children she sought shelter under her father's roof, and some time thereafter when her husband came to take the children back the father said to him: "You cannot get them until this suit is settled, the custody of the children is a part of the suit, and besides they would not go with you unless you dragged them out, and I could not see that done." The husband then said, "that will do, let us go," and he got up and went out; thereupon the grandfather says that he discovered that the children had hid in the back room to keep him from taking them.

It is charged in the bill, and it appears in evidence, that Mrs. Owens had, upon two occasions, been driven from home, and, upon the promise of amendment and better treatment, had returned to her husband's house.

Upon this state of facts the Circuit Court granted a divorce from bed and board, gave the wife the custody of their three children, and fixed her permanent alimony at $20 per month.

As to the question of alimony, the proof is that at the time

of the marriage of the plaintiff and defendant they had very little property, but as a result of industry and thrift they had become the owners of a farm worth about $2,500, and personal property valued at $500. The husband is shown to be a man between 40 and 45 years of age, strong, and in good health. He is under a legal obligation to support his wife and children, and if without fault upon their part, he renders it impossible for them to remain under his roof, he cannot by his misconduct escape the performance of the duty which the law imposes upon him. He has no room to complain, therefore, if he is required to contribute by the payment of money to the maintenance of his wife and children.

The decree of the Circuit Court is fully sustained by authority. As we have seen, the wife on more than one occasion was driven from home by the unkindness of her husband. Her voluntary return was a condonation of the offence which induced her to leave.

Condonation is defined to be the remission, by one of the married parties, of an offence which he knows the other has committed against the marriage, on the condition of being continually afterward treated by the other with conjugal kindness. 2 Bishop on Marriage and Divorce, sec. 269. As a result of this rule, while the condition remains unbroken there can be no divorce, but a breach of it revives the original remedy.

Cruelty, it is said, is cumulative, admitting of degrees and augmenting by addition; so that it may be condoned and even forgiven for a time, and up to a certain point, without any bar in sense or reason to bring it all forward when the continuance of it has rendered it no longer condonable. While, therefore, acts of violence committed at an earlier period, and which have not prevented the wife from living with her husband, or going back to him after they have been separated, cannot be made the sole foundation of an action of separation, they form the subject of investigation and proof with a view to determine what is the true issue in the case, namely: whether the wife

can with safety to her person and health continue to live with him.    2 Bishop on Marriage and Divorce, sec. 304.

Cruelty consists of successive acts of ill-treatment, if not of personal injury; so that something of a condonation of earlier ill-treatment must in such cases necessarily take place.  Sec. 305.

Nothing can be more grievous to a true and faithful wife than a malicious charge from her husband of adultery.  Standing absolutely alone it is commonly regarded as not quite sufficient to justify a divorce, yet when presented with other facts enhancing its enormity, it is deemed a gross act of cruelty. 1 Bishop on Marriage and Divorce, sec. 1569.

We have then a case of a wife in delicate health, driven from her home and returning upon the promise of kind treatment, the promise violated and the offence renewed; violently jerked from her bed and compelled to sleep upon the floor; accused in the grossest terms of infidelity to her marriage vow, and her children denounced as bastards; and finally ordered to leave and never to return.   These acts, in our judgment and upon the authority quoted, establish a plain case of cruelty and a "reasonable apprehension of bodily hurt," justifying a sentence of divorce from bed and board.

The innocent parent on whose prayer the divorce is granted will usually have the custody of the children.   A woman compelled by her husband to resort to divorce ought not to obtain it at the expense of losing the society of her children.   And as one who has done well or ill in the marriage relation will be likely to do the same in the parental all courts lean to the innocent parent when determining the custody of the child. 2 Bish. on Marriage and Divorce, sec. 1196.

Nothing need be added to what has already been said upon the subject of alimony, especially in view of the fact that the decree of the Circuit Court reserves the right to increase or diminish the amount allowed, and that court will doubtless give any relief to which the parties may show themselves entitled.

We are of opinion that the decree of the Circuit Court should be affirmed.

*Affirmed.*