# Richmond

DOROTHY FLORENCE DeMOTT v. HARRY BERNARD DeMOTT.

April 23, 1956.

Record No. 4482.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*George E. Haw* (*Leslie D. Campbell, Jr.*, and *Haw & Haw* on brief), for the appellant.

*David Meade White, Jr.*, and *Ivy P. Blue, Jr.* (*White, White & Roberts* on brief), for the appellee.

EGGLESTON, J., delivered the opinion of the court.

On July 2, 1954, Harry Bernard DeMott filed in the court below his bill for divorce against Dorothy Florence DeMott on the ground that she had willfully deserted him without justification on June 29, 1954. He prayed for the custody of their infant daughter, Sharon Ann DeMott, who was then six years of age. The bill alleged that the wife was an alcoholic, was frequently abusive of the plaintiff, and unmindful of the care, health and welfare of their daughter.

The wife filed an answer and cross bill in which she denied the allegations of the bill and alleged that five days previous to the date of the alleged desertion her husband assaulted and beat her and threatened her life with a knife. She alleged that as the result of "this conduct" she was afraid to live with him and on advice of counsel left their home on June 29, 1954, taking their daughter with her. She prayed for a divorce *a mensa* on the ground of cruelty and constructive desertion and that she be awarded the custody of the child. There was no prayer for alimony.

The litigation has been conducted with a display of extreme bitterness on both sides. Several collateral issues were disposed of which are not material on the present appeal. Suffice it to say that upon the consideration of depositions taken by both parties, the lower court entered a decree awarding the plaintiff husband a divorce *a mensa*, the custody of their child, and dismissing the cross bill of the defendant wife. From that decree the wife has appealed. She contends that the decree is contrary to the law and the evidence in that, (1) It

awards the plaintiff husband a decree of divorce based on his uncorroborated testimony; (2) Under the evidence adduced she, the defendant wife, should have been awarded a decree of divorce on her cross bill; and (3) Under the evidence adduced she, the defendant wife, and not the plaintiff husband, should have been awarded the custody of their child.

The printed record upon which we are asked to review the sufficiency of the evidence is before us in a most unsatisfactory state. The designation of the parts of the record for printing is entirely inadequate for this purpose. The appellant has included in her designations mainly such portions of the evidence as are favorable to her, omitting those portions which are favorable to the appellee. For example, she has designated the cross-examination of the plaintiff and omitted the direct examination of this witness. In a similar manner she has designated her own direct examination and omitted her cross-examination. The testimony of other witnesses is treated in a similar manner.

The appellant who asks us to set aside a finding of the trial court on the ground that it is not sustained by the evidence has the primary responsibility of designating all of the evidence which is necessary and material for us to determine that issue. He must designate not only that which is favorable to him, but that which is favorable to his opponent, for obviously without access to all of the material evidence it is impossible for us to determine its sufficiency.

Where, as here, the appellant has been derelict in this respect the rule affords the appellee an opportunity to supply the missing material evidence by a designation filed either with the clerk of the lower court or with the clerk of the appellate court. Rule 5:1, § 6(a). In the present case the appellee did not avail himself of this opportunity, but instead has printed some of the omitted evidence in his brief. This is not a compliance with the rule. Rule 5:1, § 6(f), says: "It will be assumed that the *printed record* and the original exhibits contain everything germane to the errors assigned, * * * ." (Italics supplied.)

Again, Rule 5:1, § 6(d), provides that "all assignments of error *must be designated by appellant* and printed." (Italics supplied.) This mandatory provision has been ignored, and we must look to the manuscript record for the assignments of error.

The failure of the appellant to present an intelligible record made up in accordance with the rules is a plain invitation to dismiss the

appeal which is likely to be accepted. *Lewis* v. *Commonwealth*, 193 Va. 612, 615, 70 S. E. 2d 293, 296.

■ The bill alleges that the parties were "lawfully married" at Camp Stoneman, California, on September 15, 1943, but the record shows that they were previously married at Elkton, Maryland, on December 24, 1941. The application for the first marriage license was signed by DeMott, who in response to the inquiry whether he was "single, widower or divorced," stated that he was "single." It developed, however, that unknown to his bride he had been previously married to Ethel Ronoman who had obtained an interlocutory decree of divorce from him on the ground of adultery in a New York court on November 13, 1941. A final decree of divorce in that matter was not entered until March 12, 1942, several months after the plaintiff's marriage to his present wife. When she discovered this situation they were again married at Camp Stoneman, California, on September 15, 1943.

After their marriage in 1943 the plaintiff husband became an officer in the Quartermaster Corps of the United States Army. He was stationed at military posts in this country and in Germany where he lived with his wife and daughter, the latter having been born on May 9, 1948. In March, 1953, he was transferred to the Richmond Quartermaster Depot in Chesterfield county, where he was stationed with the rank of captain at the time of the institution of the present proceeding. In March, 1954, he rented an apartment at Ashland in Hanover county, where he made his home with his wife and daughter until the date of the separation on June 29, 1954.

In testing the sufficiency of the evidence to sustain the decree here under review, it must be remembered that in a suit for divorce the allegations of the bill, whether denied or not, must be proved by full, clear and adequate evidence. *Westfall* v. *Westfall*, 196 Va. 97, 102, 82 S. E. 2d 487, 490. Moreover, Code, § 20-99, expressly provides that a divorce shall not be granted "on the uncorroborated testimony of the parties or either of them; and, whether the defendant answer or not, the cause shall be heard independently of the admissions of either party in the pleadings or otherwise".

The plaintiff husband alleged in his bill and testified that from 1946 until the date of their separation, the defendant wife had been drinking to excess at the several posts at which he had been stationed and where she accompanied him; that she had embarrassed him and seriously impaired his career as an army officer by making false re-

ports to his superior officers, at his present post and elsewhere, about him and his treatment of her; that she had frequently neglected her household duties; that she was not a fit mother to their child; and that she had left their home in Ashland and willfully deserted him without cause on June 29, 1954.

Each of these charges the defendant wife denied categorically in her answer and in her testimony. The plaintiff husband introduced not a single witness to corroborate his testimony as to these matters. Not a witness corroborated his testimony that the defendant wife had drunk to excess. Not a single witness from his present military post in near-by Chesterfield county, or from any other post at which he had been stationed, corroborated his testimony as to any charges she had made to them about him, or that his military career had been interfered with or impaired by anything she had done to or said about him. Not a witness corroborated his testimony that she had neglected her household duties. The only testimony on the latter subject comes from those who testified on her behalf and is to the contrary. Not a witness except him testified that she was an unfit mother.

As to the occurrences which shortly preceded the separation, the plaintiff testified that on June 24, 1954, an altercation arose between his wife and himself because he allowed the child to go "barefooted;" that she "grabbed the child by the arm" and proceeded to strap her shoes on in a rough manner; that she swore at the child and he intervened; that as the result of this altercation he took the child and went to the office of a justice of the peace in Ashland to see what could be done to keep his wife "from causing more trouble." On the same day Mrs. DeMott procured a warrant for the plaintiff's arrest.

The plaintiff husband further testified that his wife and daughter remained at their home in Ashland through the night of June 28. When he returned from work the next day, June 29, he found that his wife had packed all of her clothes and those of the child and had left home without informing him where she was going. The warrant which she had procured for his arrest was tried and dismissed on July 1. At that trial he ascertained that since leaving home she and the child had been staying at a near-by motel. Some days later he found out that she and the child had left the motel and had gone to the home of Mrs. DeMott's mother in New York.

The wife's account of their quarrel on June 24, and the cause of her leaving home later, is quite different from that of her husband.

She said that they "had been arguing all that week;" that her husband and the child came in late that afternoon; that when she protested that the barefooted child might cut her feet her husband became angry, grabbed her, threw her against the wall, struck her, and threatened her with a butcher knife. Immediately thereafter, she said, he took the child and left home. On the same evening she procured a warrant for his arrest.

The defendant wife did not deny the husband's testimony that she left home on June 29 and went to a near-by motel where she remained until July 1, when the warrant which she had procured against him was tried. But she testified that after that trial she requested her husband to provide a place for her and the child, or that he allow her (the wife) to return home. His reply was that his counsel had advised him not to allow her to return home. Whereupon she returned to the motel and being without means of support for herself and her child, upon the advice of her counsel went to her mother's home in New York, taking the child with her.

The plaintiff husband did not introduce a single witness to corroborate his testimony as to the circumstances under which his wife had left home on June 29, or that she had willfully deserted him on that day without just cause. The only evidence which he claims is corroborative in this particular comes from J. E. Wickham, the Town Sergeant of Ashland, and James J. Cox, a local real estate agent.

Wickham testified that subsequent to the altercation of June 24, when Mrs. DeMott had appealed to him for protection against her husband, he noticed that she had left the apartment while Captain DeMott remained there.

Cox testified that when he went to the apartment, on a date he could not recall, to see about subletting the premises, he found Mrs. DeMott packing her belongings in the car and preparing to move.

The testimony of these two witnesses merely corroborates the husband's testimony that his wife had left their home. It throws no light whatsoever on her reason for doing so. Corroboration of the plaintiff's testimony that his wife had left home is not corroboration of his testimony that she did so without just cause or with the intent to desert him. Annotation, 15 A. L. R. 2d, pp. 203, 204, and cases there cited. Indeed, the mere fact that she had left home is no more corroboration of his testimony that she had left without just cause, than it is of her testimony that she remained away because he refused

to allow her to return. Nor do we have any evidence of any circumstances which showed that the wife left home without just cause.

The very essence of the husband's case is that his wife willfully deserted him without just cause. In view of her denial that she did so, and the total lack of corroborative evidence on this vital element of his case, the husband was not entitled to a decree for divorce. *Davis v. Davis,* 187 Va. 63, 69, 45 S. E. 2d 918, 921.

■ We find no error in the ruling of the trial court denying the defendant wife a divorce on her cross bill on the ground of cruelty and constructive desertion. Code, § 20-95, provides: "A divorce from bed and board may be decreed *for cruelty, reasonable apprehension of bodily hurt,* abandonment or desertion." (Italics supplied.) We have repeatedly held that the cruelty which authorizes a divorce is conduct that tends to bodily harm, and thus renders cohabitation unsafe; or that involves danger to life, limb or health. *Upchurch* v. *Upchurch,* 194 Va. 990, 999, 1000, 76 S. E. 2d 170, 176, 177, and cases there cited.

Here the wife bases her charge of cruelty on the single incident of June 24, when her husband according to her testimony assaulted her. It is generally held that a single act of physical cruelty does not constitute ground for divorce, unless it is so severe and atrocious as to endanger life, or unless the act indicates an intention to do serious bodily harm or causes reasonable apprehension of serious danger in the future, or the precedent or attendant circumstances show that the acts are likely to be repeated. 27 C. J. S., Divorce, § 25-b, p. 548; *Brown* v. *Brown,* 215 S. C. 502, 56 S. E. 2d 330, 334, 15 A. L. R. 2d 163.

As reprehensible and unwarranted as the assault was, it did not do her serious bodily harm or cause her reasonable apprehension of serious danger in the future. She remained in the apartment with her husband and child for a period of five days thereafter. Nor is there any evidence from the defendant wife or other witnesses that he had previously been guilty of such repeated acts of mistreatment that she could not with safety to her person and health continue to live with him. *Owens* v. *Owens,* 96 Va. 191, 195, 196, 31 S. E. 72.

In short, our conclusion is that neither party is entitled to a divorce upon the evidence adduced before the trial court. While the record shows a deplorable marital situation, that does not warrant the granting of a divorce upon insufficient evidence. As we observed of a similar situation in *Phipps* v. *Phipps,* 167 Va. 190, 191, 188 S. E. 168,

169, "If the parties were divorced, the ends of society would perhaps be better served, but the courts cannot make cases for the parties or supply the necessary elements even to attain a worthy purpose."

■ In awarding the custody of the child the paramount consideration is her welfare and best interests. As we said in *Mullen* v. *Mullen*, 188 Va. 259, 270, 49 S. E. 2d 349, 354, "The rights of neither parent take precedence over the rights of the child. The welfare of the child is superior to the wishes and personal desires of either of them. In considering their qualifications and fitness, we must look to their adaptability to the task of caring for the child; their adaptability to control and direct it; the age, sex, and health of the child; its temporal and moral well-being, as well as the environment and circumstances of its proposed home; and the influences likely to be exerted upon the child." See also, *Florance* v. *Florance*, 197 Va. 432, 435, 90 S. E. 2d 111, 113.

We do not agree with the trial court that the evidence shows that it will be to the best interests of this little girl, who is now about eight years old, that her custody be awarded to the plaintiff husband. Except for the statement of Father Curtin, which will be later discussed, there is no evidence other than the testimony of the plaintiff himself that he is a fit person to be entrusted with her custody. There is a total lack of evidence of his adaptability to the task of caring for her and his opportunity for doing so. When asked what disposition he proposed to make of her while at his present post, his reply was that "she would go to St. Joseph's Villa," a private school in Richmond, or he might "send her down to the girl school at Williamsburg." There is no evidence that satisfactory arrangements can be made for her care at either of these institutions.

When asked what disposition would be made of the child should he be transferred to another post, which he said might occur in the near future, his reply was that she would go to his sister's home on Long Island pending his discharge from the service. There is no evidence whatsoever as to the conditions in this home, whether they are proper and suitable for the child, or whether she would be acceptable as a member of the household. There is a total lack of evidence as to her opportunities for suitable associates, education and religious and moral training there.

The record shows that when the disposition of the custody of the child was under consideration, the trial court, over the objection of counsel for the defendant wife, heard the testimony or statement of

Father Curtin to the effect that he had known the plaintiff for "almost two years," and that he "is a suitable person to have custody of his infant child," while the defendant wife "is not a fit parent for a child." It appears that the plaintiff husband frequently attended a local Roman Catholic Church in charge of Father Curtin, while the defendant wife did not do so.

It is true that upon the strenuous objection of counsel for the defendant wife that timely and proper notice had not been given of the taking of this testimony, it was not transcribed and made a part of the record. Nor does the record show that it was considered by the trial court in its disposition of the case. But it is significant that without this statement of Father Curtin there is no evidence whatsoever, other than the testimony of the plaintiff himself, that the plaintiff is a fit person to have the custody of the child and that the defendant wife is unfit.

Nor are we satisfied that upon the evidence adduced the trial court should have awarded the custody of the child to the defendant wife. As respects the custody of a young daughter, other things being equal, the law favors the mother if she is a fit person. *Mullen* v. *Mullen, supra,* 188 Va., at pages 270, 271, 49 S. E. 2d, at page 354; *Markley* v. *Markley,* 145 Va. 596, 604, 134 S. E. 536.

There is a conflict of evidence as to the fitness of the defendant wife and mother for the custody of this child. While the preponderance of the verbal testimony is in her favor, her own testimony and other incidents during the trial tend to show her lack of emotional stability. This may have been occasioned in whole or in part by the bitterness of the litigation, but it is a pertinent matter which should be fully inquired into.

The defendant wife testified that if awarded custody of the child she would take her to the home of her (the defendant's) mother in New York. But like the prospective home which the plaintiff husband suggested for the child with his sister, there is no evidence whatsoever of the conditions in the home of the mother of the defendant wife, whether the influences there are proper and suitable for this little girl, or even whether she would be acceptable there. Nor are we enlightened as to the child's opportunities for proper associates, for education, and for religious and moral training there.

On the whole we find that there is insufficient and inadequate evidence in the present record upon which to base a decree awarding the permanent custody of the child to either parent. Code, § 20-108,

provides that the court may on petition of either parent, or on its own motion, revise and alter its decree concerning the care, custody and maintenance of children involved in a divorce proceeding, and may make a new decree concerning the same as the circumstances of the parents and the benefit of the children may require. This statute expressly gives the court continuing jurisdiction to change or modify its decree in the respects stated. *Morris* v. *Henry*, 193 Va. 631, 639, 640, 70 S. E. 2d 417, 422. On the basis of this statute the lower court should inquire further into the fitness of both parents for the custody of this child.

For these reasons the decree appealed from is reversed in so far as it awards the plaintiff husband a divorce and the custody of the infant child. The decree is affirmed in so far as it denies the defendant wife a divorce on her cross bill. The cause is remanded for further proceedings in conformity with the views here expressed.

*Affirmed in part; reversed in part, and remanded.*