## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### Patricia Kay McKee v. Samuel McKee.

November 29, 1965.

Record No. 6039.

Present, All the Justices.

*Louis B. Fine (Melvin J. Radin; Fine, Fine, Legum, Schwan & Fine, on brief), for the appellant.*

*James R. McKenry (Brydges & Broyles, on brief), for the appellee.*

EGGLESTON, C. J., delivered the opinion of the court.

On February 18, 1964 Samuel McKee filed a bill in the court below praying for a divorce from his wife, Patricia Kay McKee, on the grounds of cruelty, desertion and adultery. The bill alleged that the wife had been guilty of adulterous conduct with Roy J. Perkins on January 19, 1964 when she spent the night with him at his home; that upon her "insistence" that she had not been guilty of misconduct on that occasion, and upon her promise that she would do better, the husband "condoned" these acts and resumed cohabitation with her; that despite her promise, he subsequently found out that she had been guilty of adultery on other occasions in 1963, and specifically on New Year's Eve, 1963; and that this latter adulterous conduct had just come to his knowledge and had not been condoned by him. It was further alleged that on February 11, 1964 the wife had left their home and had not returned.

The bill alleged that two children had been born of the marriage, a boy and a girl; that the wife had neglected them, was not a fit person for their care and custody, and prayed that their custody be awarded to him, the husband. On February 28 a decree was entered awarding the temporary custody of the children to the husband. The wife did not contest the entry of this decree.

In due time the wife filed an answer and cross-bill. She denied the allegations of cruelty, desertion and adultery in her husband's bill and prayed for a decree of divorce from him, on the ground that he had willfully deserted and abandoned her on February 11, 1964. She also asked that she be awarded the custody of the children.

After hearing the evidence ore tenus the trial court filed a written opinion in which it found that the wife was guilty of adultery as charged; that she was not a fit person to have the custody of the children, and that their custody should be awarded to the husband. A final decree to this effect was entered on May 29, 1964. On June 18 the wife filed a petition for a rehearing which was denied on the same date.

The main contention of the wife on this appeal is that the trial court erred in granting the husband a divorce on the ground of adultery, because, she says, the husband had condoned her alleged misconduct and thereafter resumed cohabitation with her. She makes the additional claims that the evidence is insufficient to show that she

was guilty of adultery and that she was an unfit person to have the care and custody of the children.

While there is some conflict in the evidence, in view of the ore tenus hearing, it must be considered by us in the light of the finding in favor of the husband.

The parties reside at Virginia Beach and the husband is a lieutenant-commander in the United States Navy. They were married on April 19, 1954 at Lucedale, Mississippi. Two children were born of the marriage, a son and a daughter, who at the time of the trial were aged, respectively, nine and six years.

Carl R. Weist, a police officer of the city of Virginia Beach, testified that he became acquainted with Mrs. McKee about three years prior to the trial when he received complaints from neighbors of activities at her home. In checking these complaints he saw different cars parked in front of her home. On several occasions he had seen her in inns or taverns with different men. He further said that she had the general reputation "of going out with men, different men on many occasions."

While her husband was away from home on various naval assignments, Mrs. McKee frequently used the services of baby sitters. Often she would take her children to the home of Mrs. Bessie Coulborn where they remained for days at a time. Frequently Mrs. McKee would be away from home all night and would not return until the next morning. Sometimes the children were not sent to school.

On January 19, 1964 the husband returned home from a naval assignment. He found the house closed and his wife and children gone. He later learned that the children were at the home of Mrs. Coulborn, the baby sitter. Upon receiving information as to the possible location of his wife, he set out to find her. About 10:00 P.M. he found her car parked in the driveway of Roy J. Perkins, a noncommissioned naval officer. McKee contacted the police and had them go with him to the house. They knocked on the door but there was no response. They kept the house under surveillance and about half an hour later again knocked on the door. On this occasion they announced that the police were at the door. After sometime Perkins came to the door and admitted that Mrs. McKee was there. The police went in and found that she and Perkins were the only occupants of the house. The police told her that her husband was outside and wished her to return home. She refused to do so and remained

at the Perkins house until about 7:30 the next morning when Perkins brought her home.

While Mrs. McKee and Perkins admitted that they had spent the night together in the Perkins home, they denied that they were guilty of illicit relations on that occasion. Mrs. McKee testified that she did not go home with her husband on that night because she was afraid that he would do harm to her.

Mrs. McKee and Perkins admitted that previously they had been out together on numerous occasions. On one occasion they spent the night at the home of a friend whom Mrs. McKee designated as "Dottie." Perkins said that he slept on one end of the couch and Mrs. McKee on the other. The denied that they were guilty of illicit relations on that occasion.

The husband testified that on January 20, the day following the occasion on which he located his wife at the Perkins home, he had a talk with her; that she stated that she was "absolutely innocent" of any misconduct with Perkins on that occasion; and that although his suspicions were to the contrary, he told her that he believed her. He further testified that because he wanted to preserve the marriage and keep the family together, upon her promise to "behave herself" and be a good wife and mother, he forgave her and they resumed cohabitation until early in February, 1964.

On or about February 8, at about 11:30 P.M., the husband returned home from another naval assignment. Again he found the house empty and the wife and children away. Being aware of his wife's former association with Perkins, he went to the latter's home in search of her car but did not find it there. About six o'clock the next morning he returned to the Perkins home and found the McKee car partly concealed and parked in the back yard. He found that both screen doors were locked from the inside which indicated to him that the house was occupied. He drove the car home. During the day he found that the children were at the home of Mrs. Coulborn, the baby sitter, where they had been for several days. Mrs. McKee did not return home that day until her husband and Detective Weist had located her at a tavern, the Village Inn, where she was found drinking beer with Perkins. She then returned home with Weist and her husband.

On February 11, when McKee related to his wife some of the things which Weist and others had told him concerning her misconduct, she left home, stating that she was going to consult a lawyer

about instituting suit against Weist and others who had given information about her behavior. She did not return home for several days.

In the meantime, the husband had consulted Detective Weist about obtaining evidence of his wife's misconduct. On February 11, Weist introduced Goerge Bennett Ricketts to McKee. Ricketts told McKee that on several occasions he had had illicit relations with Mrs. McKee.

Ricketts testified that about 4:30 on the morning of Labor Day, 1963, he saw Mrs. McKee driving along the Virginia Beach boulevard and fell in behind her car. He had previously seen her when he was cutting shrubbery in the neighborhood of her home. He said that she drove to a parking lot at Princess Anne Plaza; that he drove in behind her and engaged her in conversation; that she got into his car and said that she wanted to ride around with him; that they continued to drive around until about 4:30 P.M. that day. During this period, he said, he had intercourse with her several times. He further testified that he had illicit relations with her on the following New Year's Day.

McKee testified that because of the recent episode on February 8 and 9, 1964, when he found his wife's car parked at Perkins' house, he concluded that she had violated her promise to refrain from further misconduct with him. Because of this, and because of what Ricketts told him on February 11 of his relations with Mrs. McKee, he decided that the marriage was at an end. Since he was then due for an overseas assignment he took the two children to the home of his sister in Cleveland, Ohio, on February 12. At the time of the trial they were still there. The evidence is undisputed that this is a suitable and pleasant home for them.

In its written opinion the trial court found that under the related evidence Mrs. McKee was guilty of adultery and that the husband was entitled to a divorce from her on that ground, "to say nothing of her cruel conduct" toward him. It further held that because of the misconduct of Mrs. McKee and her neglect of the children, she was not a suitable person for their care and custody. Moreover, the opinion points out that Mrs. McKee "offered no evidence of her future plans, of how and where she would or could provide for the children." Accordingly, the court awarded the custody of the children to the father, "with reasonable rights of visitation" to the mother.

■ Although, as has been said, the main contention of the wife on appeal is that the husband's condonation of her alleged misconduct

barred his right to a divorce, this issue was not clearly developed in the trial court. Condonation was not pleaded as an affirmative defense in the wife's answer as it should have been. *Martin* v. *Martin*, 166 Va. 109, 116, 184 S. E. 220, 224. The court's written opinion makes no mention of the matter of condonation. Nevertheless, on its own motion, the court may and should deny a divorce where it appears from the record that the injured party has condoned the acts complained of. This is because the interests of the public as well as those of the individual parties are concerned. *White* v. *White*, 121 Va. 244, 247, 92 S. E. 811; *Tarr* v. *Tarr*, 184 Va. 443, 449, 35 S. E. 2d 401, 404; *Cottle* v. *Cottle*, 129 W. Va. 344, 40 S. E. 2d 863, 868; 17 Am. Jur., Divorce and Separation, § 356, pp. 508, 509.

■ In the present case, for the reasons to be stated, we are convinced that the husband's right to a divorce is not barred by condonation.

Code (Repl. Vol. 1960), § 20-94, reads thus:

"*Effect of cohabitation after knowledge of adultery; lapse of five years.*—When the suit is for divorce for adultery, the divorce shall not be granted, if it appear that the parties voluntarily cohabited *after the knowledge* of the fact of adultery, or that it occurred more than five years before the institution of the suit, or that it was committed by the procurement or connivance of the plaintiff." (Italics supplied.)

Under the statute voluntary cohabitation after knowledge of the spouse's misconduct amounts to condonation and bars a divorce to the condoning party. To constitute condonation, "Knowledge is necessary. One cannot condone what one does not know." *Martin* v. *Martin, supra*, 166 Va. at 116, 184 S. E. at 224. See also, *Owens* v. *Owens*, 96 Va. 191, 195, 31 S. E. 72; *Elder* v. *Elder*, 139 Va. 19, 26, 123 S. E. 369.

In 17 Am. Jur., Divorce and Separation, § 231, p. 416, the principle is thus stated: "Where a defendant is guilty of several matrimonial offenses, and the plaintiff, when he forgives the defendant, knows of one of them but not of the others, the condonation operates as to the known offense; but because of the lack of knowledge the forgiveness does not bar an action based on the others." See also, 27A C. J. S., Divorce, § 60, p. 203.

"Moreover, it is essential that there be no repetition of the offense. Repetition revives the right to complain of an injury forgiven." *Martin* v. *Martin, supra*, 166 Va. at 116, 184 S. E. at 224. See also, 17 Am.

Jur., Divorce and Separation, § 243, p. 425; 27A C. J. S., Divorce, § 62-b, p. 213 *ff*.

■ In the present case the record shows that the husband forgave the wife for her misconduct with Perkins on January 19 and 20, 1964 and renewed cohabitation with her. He did not condone her misconduct with Ricketts because at that time he had no knowledge of it. This knowledge he first acquired in his conversation with Ricketts on February 11.

Again, the record shows that the wife breached her promise to her husband, which was the basis for his condonation of her past offenses with Perkins, by thereafter renewing her association with Perkins. As has been said, on February 8 she was away from home throughout the night and her car was parked in the back yard of Perkins' house. The next day she was found at a tavern drinking beer with him. Perkins admitted that he had been to Mrs. McKee's home late at night and had gone out with her "four or five times after the 20th" of January episode. This conduct on her part nullified the husband's condonation of her prior misconduct.

" * * * Condoned adultery is revived where the guilty party has resumed his association with his former paramour, even without strict proof of an actual repetition of the offense." 17 Am. Jur., Divorce and Separation, § 245, p. 428. See also, Annotation: 16 A. L. R. 2d 600; *Martin* v. *Martin, supra,* 166 Va. at 116, 184 S. E. at 224.

The instant case is distinguishable from *Huddle* v. *Huddle,* decided at this session. In that case we found that the husband's right to a divorce was barred because "the parties voluntarily cohabited after the knowledge" by the husband of the wife's adultery. Code, § 20-94, *supra.*

There is ample evidence in the present case to sustain the trial court's finding that Mrs. McKee was guilty of adultery with Perkins when they spent the night of January 19 and 20, 1964 together at his home and when they previously spent the night at the home of a friend and admittedly occupied the same bed. The trial court did not believe their denial of misconduct on these two occasions.

Ricketts' testimony, as well as his admission to McKee, proved that he was guilty of adultery with Mrs. McKee. It is true that in its written opinion the trial court stated that it was "difficult to believe" some of the details of Ricketts' story, but it seems to have

accepted as true the main point that he had had illicit relations with Mrs. McKee.

The overwhelming evidence supports the trial court's finding that Mrs. McKee was an unfit person to have the care and custody of the two children and that their custody should be awarded to her husband, with reasonable rights of visitation to her.

Counsel for the wife is allowed a fee of $200 to be paid by the husband for prosecuting this appeal.

The decree appealed from is

*Affirmed.*