**Salem**

GARY LEE CUTLIP

v.

SUSIE SAUNDERS CUTLIP

No. 1209-88-3

Decided August 29, 1989

COUNSEL

Randolph D. Eley, Jr., for appellant.

Edwin C. Stone (Stone & Hamrick, P.C., on brief), for appellee.

OPINION

KEENAN, J.—Gary Lee Cutlip (husband) appeals from a final decree in which the trial court granted Susie Saunders Cutlip (wife) a divorce on the grounds of adultery and awarded her spousal and child support. On appeal, the husband asserts that the evidence was insufficient to support a finding of adultery and that spousal support was improperly determined. In addition, the husband argues that the trial court erred in awarding child support to his daughter, Carri Elizabeth Cutlip, who was eighteen years of age at the time the final decree was entered. We reverse the trial court's decision based on our finding that the evidence was insufficient to establish adultery and that the spousal and child support awards were improperly determined.

The parties were married on June 21, 1962. Two children were born of the marriage, Carri Elizabeth Cutlip, born June 3, 1970, and Charles Edward Cutlip, born June 11, 1973.

The evidence showed that the husband left the marital home on December 26, 1986, but returned two days later. On the morning following his return, the husband admitted to the wife that for approximately nine months, he had been involved in an adulterous

relationship with Kathy Lee, an employee in his office. The wife forgave the husband and agreed to have him back in the home. Approximately two weeks later, the marriage again began to deteriorate. The husband spent long hours away from home. Although he denied that he was having sexual relations with Kathy Lee at this time, he admitted to having deposited $1,500 into her bank account.

On February 21, 1987, the husband traveled to West Virginia. He told his wife that he was making the trip to help her brother-in-law, Randy Biggs, with his income taxes. He also told her that he planned to spend the night with Biggs. The husband left Pulaski, Virginia, at approximately 1:30 p.m. on February 21 and returned between 1:30 and 2:00 p.m. on the following day.

When the husband arrived at Biggs' home, he informed Biggs that he did not intend to stay. He told Biggs that he was going to meet Kathy Lee at a lounge called Bo's in Bluefield. Later that evening, the husband telephoned Biggs and invited him to Bo's. Biggs declined. The following morning, the husband called Biggs and inquired as to whether the wife had called. Biggs informed him that she had not. However, several days later, the wife did call, and Biggs told her what had transpired on the evening of the twenty-first. Later, when questioned by the wife, the husband maintained that he had spent the evening of February 21, 1987 with Biggs. The wife continued to live with the husband until March 2, 1987, at which time she informed him that she no longer wanted to live with him. The husband left the marital home that day.

On August 4, 1988, the trial court granted the wife a divorce on the grounds of adultery. The court ordered $450 per month spousal support, as well as child support in the amount of $370 per month.[1] Carri Elizabeth Cutlip had turned eighteen years of age on June 3, 1988.

The husband first argues that the evidence was insufficient to support the trial court's finding of adultery. Although the husband admits to having had an adulterous relationship with Kathy Lee

---

[1] The decree states in pertinent part: (2) The names and birthdates of the children to whom a duty of support is owed are Carri Elizabeth Cutlip, born June 3, 1970, and Charles Edward Cutlip, born June 11, 1973.

prior to December 28, 1986, he asserts that the wife's actions on December 29, 1986 and thereafter amounted to condonation of his behavior. The wife acknowledges that on December 29, she condoned the husband's actions. However, she argues that the husband's behavior subsequent to that date also amounted to adultery. In the alternative, she argues that his behavior during this period nullified her condonation of his prior misconduct.

■ Initially, we find that the evidence regarding the husband's actions after December 29, 1986, was insufficient to prove adultery. In order to prove adultery, the evidence must be clear and convincing. *Seemann v. Seemann*, 233 Va. 290, 293, 355 S.E.2d 884, 886 (1987). Although this evidence need not be unequivocal, it must be such that " 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.' " *Id.* n.1 (quoting *Walker Agcy. & Aetna Casualty Co. v. Lucas*, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975)). Despite the fact that the husband began to spend long hours away from his home and lied to his wife concerning the events of February 21, 1987 creates a strong suspicion of guilt, we are unable to say that this is clear and convincing proof of adultery. There was no evidence before the trial court that the husband was alone with Kathy Lee at any time during this period. Thus, the evidence is not inconsistent with the husband's innocence.

■ We also find that the husband's actions after December 29, 1986, did not nullify the wife's condonation of his conduct prior to that date. "Condonation is defined to be the remission, by one of the married parties, of an offense which he knows the other has committed against the marriage, on the condition of being continually afterward treated by the other with conjugal kindness." *Owens v. Owens*, 96 Va. 191, 195, 31 S.E. 72, 74 (1898). *See also Martin v. Martin*, 166 Va. 109, 116, 184 S.E. 220, 223-24 (1936). Conjugal kindness requires that the guilty spouse "shall not only refrain from a repetition of the offense forgiven, but shall also refrain from committing any other offense which falls within the cognizance of a martrimonial court." *Michels v. Michels*, 110 N.J. Eq. 393, _____, 160 A. 518, 519 (1932). Condoned adultery is revived where the guilty party resumes his association with his paramour. *McKee v. McKee*, 206 Va. 527, 532, 145 S.E.2d 163, 166 (1965). Although revival does not require strict proof of an actual repetition of the offense, *Id.* at 533, 145

S.E.2d at 167, we find that the evidence presented here was insufficient to revive the previously forgiven acts of adultery. While the husband's behavior after December 29, 1986 creates a suspicion of guilt, it is also not inconsistent with his innocence. As previously stated, there was no evidence that the husband spent any time alone with Kathy Lee. Instead, the evidence showed only that he deposited $1,500 into Lee's bank account, met with her in a public place, and lied to the wife about spending the night with Randy Biggs.

We find that this evidence is much weaker than the evidence reviewed by the Supreme Court in *McKee*, where the court found the wife's behavior sufficient to nullify her husband's condonation of her prior adultery. In *McKee*, the wife's vehicle was found concealed in her paramour's backyard and she was found drinking beer in a tavern with him the next day. Further, the paramour in *McKee* admitted that since the condoned episode, he had been to the wife's home several times late at night and had gone out with her four or five times. In contrast, the record before us contains evidence of only one meeting of the husband and Kathy Lee in a public place. Although the husband lied about spending the night with Randy Biggs on February 21, 1987, there is no evidence regarding his whereabouts after he met Lee in the bar. Therefore, we find that the evidence was insufficient to revive the prior condoned acts of the husband's adultery.

■ Next, we find that since the trial court was requied by Code § 20-107.1 to consider its finding of adultery in setting spousal support, we also must reverse that award and remand the matter for reconsideration of spousal support in accordance with the findings expressed herein. Further, it appears from the record that the trial court failed to strike all references to support for Carri Elizabeth Cutlip from the final decree, even though she had turned eighteen before the decree was entered. Since Carri Elizabeth Cutlip was eighteen years of age at the time of the trial court's decree, the child support order must be corrected, as the trial court's jurisdiction to order support for a child is eliminated when the child reaches majority. *Hosier v. Hosier*, 221 Va. 827, 831, 273 S.E.2d 564, 566 (1981); *Eaton v. Eaton*, 215 Va. 824, 826, 213 S.E.2d 789, 791 (1975).

For the reasons stated, the decree appealed from is reversed and this cause is remanded to the trial court for further proceedings

consistent with the principles expressed herein.

*Reversed and remanded.*

Koontz, C.J., and Cole, J., concurred.