COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, Ortiz and Lorish
Argued at Fredericksburg, Virginia


DUANE ANTIONNE FAIRFAX

                                        MEMORANDUM OPINION[*] BY
v.       Record No. 2148-23-4        JUDGE MARY GRACE O'BRIEN
                                           APRIL 8, 2025

TRACEY NICHOLE FAIRFAX


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A.B. Willis, Judge

Camille A. Crandall (Haley S. Heston; Hicks Crandall Juhl, PC, on
briefs), for appellant.

Beth A. Bittel (ShounBach, on brief), for appellee.


Duane Antionne Fairfax (husband) appeals a final decree of divorce from Tracey Nichole

Fairfax (wife). Husband challenges the testimony of wife's expert witness, the equitable

distribution award of their marital bank accounts and wife's retirement account, and the spousal

support award. Finding no error, we affirm.

BACKGROUND[1]

Husband and wife married on May 8, 1992; both were in active-duty military service at the

time. The parties had two children, born in 1993 and 1998. In 1997, wife left the military to

manage the household and pursue her education. During the marriage, the parties maintained joint

bank accounts at Navy Federal Credit Union (NFCU) and USAA; they also had several joint credit

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Under settled appellate principles, we view all the evidence and reasonable inferences in
the light most favorable to wife, the prevailing party below. *Starr v. Starr*, 70 Va. App. 486, 488
(2019); *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003).

cards. Wife eventually returned to work as a civilian employee for the federal government. In 2014, husband retired from the military and likewise became a federal civilian employee. Additionally, he received military retirement and disability pay. Husband and wife have separate Federal Employees Retirement System (FERS) accounts: specifically, each has a Thrift Savings Plan (TSP) account and a FERS pension. Although wife began her federal civilian employment in 2006, her "service computation date" was calculated from 2000 because her pay was based on her "whole federal service." But that service date did not (and would not) apply to her FERS pension unless she bought back her military time[2]; wife had not yet done so. Wife explained at trial that the amount she would receive from the FERS pension upon retirement would depend on the number of years she bought back.

On March 30, 2022, the parties began living separately in the same residence. Wife purchased a new home and moved out on June 21, 2022. At the time of separation, husband's annual salary was $183,500, and wife's was $158,280. Their adult-aged son lived with wife; she paid for his mental health treatment. The son worked intermittently and contributed approximately $1,500 to the household over the course of a year. Husband filed for divorce on alternate grounds of desertion or a one-year separation. Wife counterclaimed for divorce on alternate grounds of cruelty, adultery, or one-year separation.

Consistent with deadlines in the court's pretrial scheduling order, wife designated the parties' marital counselor, Dorothy Butts-Valentine, to testify as an expert. The designation provided that Butts-Valentine "would testify about her experience, interactions[,] and observations

---

[2] Buying back military service time generally refers to the process by which federal employees can purchase credit for their prior military service to count towards their retirement benefits in the federal retirement system. The buy-back process thus enables employees to increase their years of service, which can enhance their retirement benefits. *See* 5 U.S.C. § 8411(c)(1)(B) (allowing "credit for . . . each period of military service . . . if a deposit . . . is made"); *see also Montelongo v. Off. of Pers. Mgmt.*, 939 F.3d 1351, 1353 (Fed. Cir. 2019).

of [wife] based upon her counseling appointments with [wife] and the impact the parties' separation has had on [wife]." Wife designated Butts-Valentine to "offer her opinion as to [wife's] mental health and well-being and her opinion as to how [wife] is adjusting to all the recent changes in her life." Wife also subpoenaed Butts-Valentine's therapy records of the parties' joint therapy sessions.[3]

At trial, wife testified that husband "choked" her on four or five separate occasions during their marriage; the parties' daughter confirmed that she had seen husband choke wife at least once. Both wife and the daughter also testified that husband often slapped, pushed, and "choked" the daughter and, one time, pointed a gun at the daughter's head. Wife was going to call police, but husband told her to put the phone down and said, "[Y]ou have a choice[:] either four people are going to die today[,] or two people are going to die today." Wife contacted a friend for help; the friend arrived to find husband with a "revolver on his lap" and acting "very upset" with the daughter. Wife ultimately retrieved the gun from husband and disabled it. On another day, after a fight between husband and the parties' son, wife and the children fled to a neighbor's house and called 9-1-1. Police arrested husband, and he began anger-management counseling.

Husband objected to Butts-Valentine testifying and argued that the expert designation was too vague. The court overruled his objection. Butts-Valentine testified that wife began counseling in 2019 for major depressive disorder. Following the parties' separation, Butts-Valentine also diagnosed wife with spousal psychological abuse, acute post-traumatic stress disorder, and spousal relationship distress. As of the trial date, wife remained in counseling.

Husband testified that, in addition to his salary, he received military retirement pay and disability benefits totaling $9,927 per month. Husband estimated that, at the time of separation, the

---

[3] The court denied husband's motion to quash the subpoena and ordered Butts-Valentine's records to be submitted to chambers. However, nothing in the trial record indicates that the therapy records were submitted to chambers or considered by the court.

parties' joint bank accounts contained around $171,000, which included a joint checking account with "[40-]some thousand," and approximately $25,000, $70,000, and $36,000, respectively, in joint savings accounts. He alleged that wife withdrew $70,500, which was "a little over half" of the joint savings accounts. Wife also testified there was approximately $171,000 in the joint accounts. She could not recall how much she withdrew from the joint savings accounts but estimated taking about half.

The court granted wife a divorce based on cruelty under Code § 20-91(A)(6). Applying the Code § 20-107.3(E) factors, the court valued the parties' joint bank accounts with USAA and NFCU at $171,000 to $180,000. The court found that wife had withdrawn $70,000 from the accounts and was thus entitled to $20,000. The court determined that the parties were entitled to keep their respective TSP accounts but the evidence was insufficient to value their FERS pension accounts for equitable distribution. The court awarded wife 50% of the marital share of the husband's military retirement.

The court found that husband's gross monthly income was $15,922, and wife's gross monthly income was $13,190. Based on wife's need and husband's ability to pay, and the presumptive support guidelines, the court awarded wife $2,000 per month in spousal support for 15 years.

The court entered a final divorce decree incorporating these determinations. Several months later, the court entered a military qualifying order dividing husband's "disposable retired pay" under 10 U.S.C. § 1408 and granting wife a survivor benefit plan, consistent with the divorce decree.

ANALYSIS

I. Rule 5A:18

Initially, we find one of husband's arguments procedurally barred. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of this rule 'is to require that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary.'" *Yazdani v. Sazegar*, 76 Va. App. 261, 276 (2022) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 218 (2004) (en banc)).

Husband's second assignment of error asserts that the court erred in permitting Butts-Valentine to testify to inadmissible hearsay, consisting of wife's out-of-court statements "regarding her work ethic, her conflict with [h]usband, and her safety." But husband did not make a hearsay objection during Butts-Valentine's testimony. Although his written objection to the final divorce decree stated that Butts-Valentine's testimony "contained inadmissible hearsay," that objection was not contemporaneous with the challenged evidence and thus came too late. "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). "Not just any objection will do. It must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Bethea*, 297 Va. at 743). "To be timely, an objection must be made when the occasion arises—at the time the evidence is offered or the statement made." *Cortez-Hernandez v. Commonwealth*, 58 Va. App. 66, 76 (2011) (quoting *Marlowe v. Commonwealth*, 2 Va. App.

- 5 -

619, 621 (1986)). When husband finally did object in the final divorce decree, he failed to identify the specific testimony he claimed was inadmissible. Thus, his objection to Butts-Valentine's hearsay testimony is waived. Rule 5A:18. Husband has not invoked any exceptions to the contemporaneous-objection requirement in Rule 5A:18, and this Court will not apply them sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023). Accordingly, we do not consider husband's hearsay challenge.

## II. Expert Testimony

An expert witness designation "must . . . disclose the 'substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.'" *Emerald Point, LLC v. Hawkins*, 294 Va. 544, 553 (2017) (quoting Rule 4:1(b)(4)(A)(i)). We review a trial court's "ruling on the admissibility of testimony, whether expert or lay, . . . for an abuse of the court's discretion." *Id.*

Husband contends that wife's expert designation of Butts-Valentine was insufficient because it "contain[ed] none of the information required by the pretrial scheduling order," which required disclosure of "all information discoverable under Rule 4:1(b)(4)(A)([i])." Husband primarily faults wife for failing to disclose the basis of Butts-Valentine's diagnoses. He also points out that wife never provided Butts-Valentine's curriculum vitae. According to husband, the court relied heavily on Butts-Valentine's testimony in granting the divorce on cruelty grounds and determining the spousal support award. He asks that we reverse and instruct the court to strike Butts-Valentine's testimony from the record.

Assuming without deciding that the court erred in admitting Butts-Valentine's expert testimony, the error was harmless. "When it plainly appears from the record and the evidence . . . that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed." *Moore v. Joe*, 76 Va. App. 509, 516-17 (2023)

(alteration in original) (quoting Code § 8.01-678). "Under the doctrine of harmless error, we will affirm the circuit court's judgment when we can conclude that the error at issue could not have affected the court's result." *Galiotos v. Galiotos*, 300 Va. 1, 15 (2021) (quoting *Forbes v. Rapp*, 269 Va. 374, 382 (2005)).

Code § 20-91(A)(6) authorizes a divorce on the basis of cruelty. "[T]he cruelty that authorizes a divorce is anything that tends to bodily harm and thus renders cohabitation unsafe; or, as expressed in the older decisions, that involves danger of life, limb[,] or health." *Zinkhan v. Zinkhan*, 2 Va. App. 200, 208 (1986) (quoting *Latham v. Latham*, 71 Va. (30 Gratt.) 307, 320-21 (1878)), *superseded by statute on other grounds*, Code § 20-107.1, *as recognized in Wyatt v. Wyatt*, 70 Va. App. 716, 720 n.1 (2019). Moreover, "a single act of physical cruelty will constitute grounds for divorce if it is so severe and atrocious as to endanger life, if it indicates an intention to do serious bodily harm, if it causes reasonable apprehension of serious danger in the future," or if "attendant circumstances show that the acts are likely to be repeated." *Davis v. Davis*, 8 Va. App. 12, 15 (1989). "[B]efore a spouse may obtain a divorce, he or she must prove the grounds therefor[,] and no complaint for divorce shall be defaulted, taken for confessed, or granted upon the pleadings or upon uncorroborated testimony." *Clark v. Clark*, 11 Va. App. 286, 296 (1990); *see* Code § 20-99(1).

The record contains overwhelming evidence that husband's behavior "cause[d] reasonable apprehension of serious danger in the future" and "attendant circumstances" made it "likely" that husband's conduct would be repeated. *Davis*, 8 Va. App. at 15. Both wife and the daughter testified extensively about husband's numerous acts of physical violence against them, including a harrowing incident when he pointed a firearm at the daughter and threatened wife. A witness confirmed that she saw husband with a firearm on his lap shortly after the incident. On another occasion, husband was arrested after a fight with the parties' son. Husband's violence

- 7 -

toward the parties' children was relevant insofar as it supported a finding that his violence toward wife was likely to repeat. *See id.*; *see also Owens v. Owens*, 96 Va. 191, 192-96 (1898) (affirming cruelty-based divorce where husband was violent toward wife and children). Considering the evidentiary record, any potential error in admitting Butts-Valentine's testimony was harmless. Wife presented corroborated evidence of husband's actions that reflected his intention to inflict serious bodily harm and caused her apprehension of serious danger. *See id.*

### III. Valuation of Bank Accounts

"A trial court has broad discretion to determine the value of assets." *Hoebelheinrich v. Hoebelheinrich*, 43 Va. App. 543, 556 (2004). "[T]he particular method of valuing and the precise application of that method to the singular facts of the case must vary with the myriad situations that exist among married couples." *Howell v. Howell*, 31 Va. App. 332, 339 (2000). Because valuation is heavily fact-dependent, "we give great weight to the findings of the trial court." *Id.* "In sum, 'the value of property is an issue of fact, not law.'" *Hoebelheinrich*, 43 Va. App. at 557 (quoting *Howell*, 31 Va. App. at 340).

Husband argues that the court incorrectly valued the parties' joint bank accounts with NFCU and USAA. He contends that because the parties did not present evidence regarding the current value of either joint account, the court had no basis for making an equitable distribution decision. We disagree.

Both parties estimated that the total value of their joint bank accounts was approximately $171,000. Wife testified that she withdrew about half of the value of the joint savings accounts; husband estimated that amount was $70,500. Based on this testimony, in making the equitable distribution award, the court determined that wife had withdrawn $70,000. Husband also testified that the parties shared a joint checking account that had a balance of approximately

- 8 -

$40,000. No evidence established that wife withdrew funds from any joint checking account, so the court's award of $20,000 to wife from the joint checking account is supported by the record.

"It is well established that the trier of fact ascertains a witness'[s] credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness'[s] testimony." *Layman v. Layman*, 62 Va. App. 134, 137 (2013) (quoting *Street v. Street*, 25 Va. App. 380, 387 (1997) (en banc)). The court assigned a range of value consistent with the parties' testimony and considered the amount wife withdrew from their joint accounts. Considering the deference we give to the factfinder in assessing witness credibility and valuing property, we cannot say that the court was plainly wrong in valuing the joint bank accounts. Therefore, we do not disturb the court's factual finding on this issue.

IV. Equitable Distribution of Wife's Retirement Account

"[A] circuit court's 'equitable distribution award will not be overturned unless the [appellate court] finds an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (second alteration in original) (quoting *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020)). "Because making an equitable distribution award is often a difficult task, 'we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.'" *Id.* (quoting *Howell*, 31 Va. App. at 350).

Husband contends that the court erred by finding insufficient evidence to value and divide the marital interest in wife's FERS pension account. He argues that wife's "service computation date" relative to her FERS pension account began in 2000, not 2006. Wife acknowledged that the "service computation date" started in 2000, even though she actually started her federal employment in 2006. But wife explained that the "service computation date" included her years of military service and only "counted for years of service as far as pay." Wife

testified that her years of military service could not "count[] towards retirement" unless she bought back her military time, which she had not done as of the date of trial.

Wife's possible future buy-back of her military-service years, using her separate funds, is simply not something that could be valued and classified for purposes of equitable distribution. Moreover, although wife submitted a proposed equitable distribution schedule that included a "pension schedule" containing an "expected monthly annuity," it did not specify the value of the account or her prospective retirement date. Consequently, we find that the court did not have sufficient evidence to classify, value, and divide wife's FERS pension account.

The uncertainty of the value is evident from the court's own statement at trial that "[w]e don't have numbers in the FERS." When the court asked husband's counsel whether husband and wife's FERS pension accounts were equal, he responded that "they might not be." "The burden is on the parties to provide the trial court sufficient evidence from which it can value their property." *Bosserman v. Bosserman*, 9 Va. App. 1, 5 (1989); *see also Taylor v. Taylor*, 5 Va. App. 436, 443 (1988) (stating that a court's valuation "must go beyond mere guesswork"). "[A]ppellate courts 'cannot continue to reverse and remand' equitable distribution cases 'where the parties have had an adequate opportunity to introduce evidence but have failed to do so.'" *Hamad v. Hamad*, 61 Va. App. 593, 609 (2013) (quoting *Bowers v. Bowers*, 4 Va. App. 610, 617 (1987)). We conclude that the court did not abuse its discretion in determining that there was insufficient evidence to value and divide wife's FERS pension account.

## V. Spousal Support

"The trial court has 'broad discretion in setting spousal support and its determination will not be disturbed except for a clear abuse of discretion.'" *Wyatt*, 70 Va. App. at 719 (quoting *Giraldi v. Giraldi*, 64 Va. App. 676, 681-82 (2015)). "When a court awards spousal support based upon due consideration of the factors enumerated in Code § 20-107.1, as shown by the

evidence, its determination 'will not be disturbed except for a clear abuse of discretion.'" *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 435 (2020) (quoting *Dodge v. Dodge*, 2 Va. App. 238, 246 (1986)). "In determining the appropriate amount of spousal support, the trial court must consider the needs of the requesting party and the other spouse's ability to pay." *Wyatt*, 70 Va. App. at 719 (quoting *Alphin v. Alphin*, 15 Va. App. 395, 401 (1992)).

Husband claims that under the military qualifying order, wife was entitled to 44.81% of his gross monthly annuity, which husband calculates to be $2,863.36 per month from his military retirement. Husband alleges that the court failed to classify this income as part of wife's financial resources under Code § 20-107.1(E)(1) and abused its discretion in awarding spousal support. Again, we disagree.

Code § 20-107.3(A)(2) provides that all pensions that are marital property are subject to equitable distribution. *Sawyer v. Sawyer*, 1 Va. App. 75, 78-79 (1985). The court correctly awarded wife a portion of husband's military pension in the equitable distribution award. In fashioning the award of spousal support, the court—as required by Code § 20-107.1(E)(8)— expressly accounted for the provisions made regarding the marital property, which in this case included husband's military pension.

Moreover, the court considered the other factors in Code § 20-107.1(E) and included factual findings regarding each factor in its letter opinion. After considering the equitable distribution award, the court also considered the parties' income from their civilian employment, finding that husband's current gross monthly income was $15,922, and wife's gross monthly income was $13,190. The court noted that the parties were married for 31 years and wife was financially providing for their adult-aged son, whose mental health condition limited his ability to support himself. The military qualifying order was not entered until after the final divorce decree; therefore, husband's claim that the order effectively increased wife's income, and thus

- 11 -

should have decreased her spousal support award, was not before the court. Based on the evidence in the record and the court's consideration of the statutory factors required for setting an award, we cannot say that it abused its discretion in awarding wife $2,000 per month.

## VI. Appellate Attorney Fees

Both parties have requested an award of appellate attorney fees and costs. "The decision of whether to award attorney[] fees and costs incurred on appeal is discretionary." *Koons v. Crane*, 72 Va. App. 720, 742 (2021) (quoting *Friedman v. Smith*, 68 Va. App. 529, 545 (2018)). In exercising this discretion where the award is authorized by statute, the Court considers "all the equities of the case." Rule 5A:30(b)(2)(C). Here, Code § 20-99(6) authorizes an award of attorney fees and costs in divorce actions. However, after considering the record before us and all the equities of the case, we deny both parties' requests for appellate attorney fees and costs.

## CONCLUSION

For these reasons, we affirm the circuit court's judgment.

*Affirmed.*