ANNUNZIATA, Judge.
Richard L. Barker (husband) appeals the order of the trial court granting him a divorce from Nancy J. Barker (wife) on the basis that the trial court erred in determining the spousal support and equitable distribution awards. Specifically, husband argues that the court overestimated his earning capacity for purposes of spousal support, improperly applied the tracing doctrine, and failed to properly consider the statutory factors in determining equitable distribution. We affirm in part and reverse in part.[1]
*526 Husband and wife were married on December 10, 1978. Wife’s three children from a previous marriage lived with the parties for a number of years. At the time of the marriage, husband owed his former spouse over $50,000 in spousal support, payable over a period of ten years. Although wife did not work outside the home for the majority of the marriage, both parties contributed funds to buy their first marital home. During the marriage, husband was employed as an upper management business executive.
Husband admits that he committed adultery during the period 1986-1989. After husband told wife of the affair in 1989, the two reconciled and joined an adultery self-help group. In 1990 or 1991, wife discovered evidence that husband had resumed his affair. After her discovery, wife moved out of the marital bedroom, although she remained in the marital home. Husband lost his job in May 1991, although he continued to receive income from his position until May 1992. On January 30, 1993, husband moved out of the marital home, and wife filed for divorce.
The trial court referred the case to a commissioner, who held hearings and filed a report. After the parties filed exceptions to the commissioner’s report, the trial court issued a letter opinion sustaining husband’s exception as to the commissioner’s recommendation for spousal support and related issues and overruling most of husband’s exceptions. After holding an evidentiary hearing, the court awarded wife less spousal support than recommended by the commissioner.
I.
Spousal Support
After taking evidence as to the past and present circumstances of the parties, the commissioner to whom the *527 case had been referred noted that, “[w]hile husband is currently unemployed, the commissioner feels that he has the ability to be employed at an income which would warrant an award of spousal support to wife of $2,000.00 per month.” The trial court elected not to follow the commissioner’s recommendation, and held additional hearings on the issue of spousal support.
In its letter opinion of July 17, 1996, the trial court noted that husband, age 62, had been temporarily employed at a rate of $75,000 per year from August 1995 to October 1995, but that husband had virtually no income for 1994, and was currently unemployed. The court also noted that husband had attended real estate school, had obtained a Virginia real estate license, had taken the necessary steps to obtain a New Jersey real estate license, and “hoped” to earn $2,000 per month. The court explained that wife, in her fifties, earned $300 per week designing jewelry, had been diagnosed with carpal tunnel syndrome, and could earn a maximum of $25,000 per year as a secretary. The court concluded, “[ljooking first at the considerable resources the parties have resulting from equitable distribution and the pertinent factors under § 20-107.1 according to the evidence, the court will require that husband pay to the wife ... the sum of $600.00 per month.” The trial court did not find that either party was voluntarily underemployed or unemployed, and did not impute income to husband or wife. Husband argues that the trial court erred in ordering him to pay spousal support to wife because he has no income, actual or imputed.
Whether and how much spousal support will be awarded is a matter of discretion for the trial court. Jennings v. Jennings, 12 Va.App. 1187, 1196, 409 S.E.2d 8, 14 (1991) (citing McGuire v. McGuire, 10 Va.App. 248, 251, 391 S.E.2d 344, 347 (1990)). Code § 20-107.1 requires a court “to consider the circumstances and factors which contributed to the dissolution of the marriage, specifically including adultery,” in determining whether to make an award of spousal support. If the court determines that an award should be made, the court *528 is required to consider all the factors outlined in Code § 20-107.1. See Rowe v. Rowe, 24 Va.App. 123, 139, 480 S.E.2d 760, 767 (1997) (citing Woolley v. Woolley, 3 Va.App. 337, 344, 349 S.E.2d 422, 426 (1986)). Among the other statutory factors, the trial court must evaluate the earning capacity of both parties. See Stumbo v. Stumbo, 20 Va.App. 685, 691, 460 S.E.2d 591, 594 (1995) (citing Goetz v. Goetz, 7 Va.App. 50, 51, 371 S.E.2d 567, 567 (1988)) (requiring the trial court to consider earning capacity); Srinivasan v. Srinivasan, 10 Va.App. 728, 734, 396 S.E.2d 675, 679 (1990) (citing McGuire, 10 Va.App. at 251, 391 S.E.2d at 347) (emphasizing that the court must consider the earning capacity of both the payor and payee spouse).
Code § 20-107.1, like its predecessor Code § 20-107, authorizes courts “to consider not only earnings but also ‘earning capacity.’ ” Jacobs v. Jacobs, 219 Va. 993, 995, 254 S.E.2d 56, 58 (1979). “Although ‘earning capacity’ necessarily includes actual earnings, it is a broader concept that allows the trial court to consider more than actual earnings.” Frazer v. Frazer, 23 Va.App. 358, 378, 477 S.E.2d 290, 300 (1996). The spousal support award, however, “must be based upon the circumstances in existence at the time of the award.” Payne v. Payne, 5 Va.App. 359, 363, 363 S.E.2d 428, 430 (1987). The relevant time period includes the immediate past, Stubblebine v. Stubblebine, 22 Va.App. 703, 709, 473 S.E.2d 72, 75 (1996) (en banc), as well as the “ ‘immediate or reasonably foreseeable future.’ ” Srinivasan, 10 Va.App. at 735, 396 S.E.2d at 679 (quoting Young v. Young, 3 Va.App. 80, 81-82, 348 S.E.2d 46, 47 (1986)). A spousal support award may not be “premised upon the occurrence of an uncertain future circumstance.” Jacobs, 219 Va. at 995-96, 254 S.E.2d at 58.
We view the evidence in the light most favorable to wife, the prevailing party below. Cook v. Cook, 18 Va.App. 726, 731, 446 S.E.2d 894, 896 (1994) (citing Steinberg v. Steinberg, 11 Va.App. 323, 325, 398 S.E.2d 507, 508 (1990)). So viewed, the evidence supports the court’s assessment of each of the parties’ earning capacity. The court heard testi *529 mony that since the separation, wife had worked at a number of low-paying jobs. Wife’s most recent job prior to the separation had been in 1986, and she had attempted but failed to bring her typing and accounting skills up to date. Wife had been diagnosed with carpal tunnel syndrome in 1980, and had four bones in her hands surgically fused together. At the time of the hearing, wife was performing piecework jewelry design, for which she was'paid up to $300 per week.
The court also heard evidence that husband received his real estate license in January 1995, joined Coldwell Banker real estate company, and earned $8,497 in 1995 before taking a ninety-day position with One Call Medical. Husband worked for One Call Medical until February 12,1996, where he earned approximately $6,000 per month. At the time of the hearing, husband had passed the New Jersey real estate examination, rejoined Coldwell Banker, and had been in training for three weeks. As a real estate agent, husband hoped to earn $2,000 per month selling real estate. This evidence supports the findings of the court, and the court did not abuse its discretion in fashioning a spousal support award of $600 per month based on this evidence.
Husband also alleges that the trial court required him to use his portion of the equitable distribution award to pay spousal support. Code § 20-107.1(8) requires the trial court to consider “[t]he provisions made with regard to the marital property under § 20-107.3” in fashioning spousal support. As husband argues, however, it is improper for a trial court to treat assets divided in equitable distribution as income. Ray v. Ray, 4 Va.App. 509, 514, 358 S.E.2d 754, 757 (1987); see, e.g., Dotson v. Dotson, 24 Va.App. 40, 44, 480 S.E.2d 131, 132-33 (1997) (describing the “ ‘distinct difference ... between a spousal support award and a monetary award’ ” (quoting Brown v. Brown, 5 Va.App. 238, 246, 361 S.E.2d 364, 368 (1987))). “[A] decree which singles out this factor [regarding distribution of the marital property] to the exclusion of others, and which essentially treats the ... spouse’s marital assets as *530 income, cannot withstand scrutiny on appeal.” Zipf v. Zipf, 8 Va.App. 387, 399, 382 S.E.2d 263, 270 (1989).
The trial court did not abuse its discretion in fashioning the spousal support award. It is important to note that the trial court’s decision turns on husband’s earning capacity rather than imputed income or principal or income from the distribution. The trial court’s letter opinion of July 17, 1996, reveals that the trial court gave primary consideration to the age and earning capacity of the parties. The court reviewed the current earnings and earning prospects of the parties, and considered the testimony of husband, wife, and the vocational expert. The court also considered the expenses claimed by each party. Finally, the court stated that it had considered “the pertinent factors under § 20-107.1.” We find that the trial court properly considered the age, expenses, distribution of assets, and earning capacity of the parties, as well as other statutory factors, in fashioning the spousal support award, and thus acted within its discretion.
II.
Classification of Property
The trial court affirmed the commissioner’s decision to trace the contributions of both parties to the first marital home and award both parties a credit for their contributions. The commissioner recommended that “the proceeds should be divided equally with offsets to each party for their contribution of separate property when the cycle of home buying began in 1978.” The commissioner recommended a credit of $23,500 for husband and a credit of $50,061 for wife to reflect each party’s separate contributions to the purchase of the first marital home on John Drive. Husband excepted to this recommendation, arguing that wife could not trace $20,061 of the $50,000 she was credited to the separate contribution she made to the purchase of the marital property and that he could trace an additional $20,000 as his separate property.
In affirming the finding of the commissioner, the trial court agreed with wife that, apart from the $23,500, “any other *531 contributions cannot be traced directly from 1978 to the current equities or properties of the parties.” The court found, “[t]here is no direct tracing evidence resulting from this sale [of the John Drive home] to the present asset picture to mandate or require any additional credit where there might otherwise be on actual value tracing to current assets.” The court went on to note “that the proceeds from the sale of the parties’ home in Richmond cannot be directly traced to a specific source [because] the many prior sale proceeds from other homes purchased during the marriage and the commingling of other funds[ ] mak[e] tracing difficult if not impossible.” The trial court concluded that wife’s credit was justified because all of her contribution went to pay marital bills, even though $20,061 was not used to purchase the first marital residence or other identifiable asset.
A commissioner’s findings of fact which have been accepted by the trial court “are presumed to be correct when reviewed on appeal and are to be given ‘great weight’ by this Court. The findings will not be reversed on appeal unless plainly wrong.” Rowe, 24 Va.App. at 140, 480 S.E.2d at 768 (citations omitted).
According to Code § 20-107.3(A)(3)(e), “[w]hen marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property,” unless the contributed property is retraceable and not a gift. We have explained the requirements of tracing under Code § 20-107.3(A)(3):
In order to trace the separate portion of hybrid property, a party must prove that the claimed separate portion is identifiably derived from a separate asset. This process involves two steps: a party must (1) establish the identity of a portion of hybrid property and (2) directly trace that portion to a separate asset.
Rahbaran v. Rahbaran, 26 Va.App. 195, 207, 494 S.E.2d 135, 141 (1997) (citing Code § 20-107.3(A)(3)(d)-(f)). “[T]he party claiming a separate interest in transmuted property bears the burden of proving retraceability.” von Raab v. von Raab, 26 *532 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997) (citing Code § 20-107.3(A)(2)).[2]
Assuming without deciding that husband’s $20,000 contribution was separate property when he acquired it, we hold that the trial court did not err in finding that husband failed to present sufficient evidence of tracing to establish his claim that he should be awarded $20,000 as his separate property.
Viewing the evidence in the light most favorable to wife, husband cannot establish the separate identity of any portion of the hybrid property, or directly trace the claimed separate portion to his original contribution of separate property. In Rowe, 24 Va.App. at 136, 480 S.E.2d at 766; von Raab, 26 Va.App. at 249, 494 S.E.2d at 161; and Rahbaran, 26 Va.App. at 209-10, 494 S.E.2d at 142, we addressed the question of “multiple source tracing,” in which marital and separate property are combined to acquire a single piece of hybrid property. See Brett R. Turner, Equitable Distribution of Property 266 (1994). This case, in addition, presents the additional problem of “multiple destination tracing,” in which only a portion of hybrid property is used to acquire or invest in additional properties, either simultaneously or successively. Id. at 268. To determine whether a party’s separate property can be retraced under such circumstances, courts have adopted widely varying approaches to address the character of withdrawals from hybrid accounts. See J. Thomas Oldham, Tracing, Commingling, and Transmutation, 23 Family L.Q. *533 219, 230-33 (1989) (describing approaches). Whatever approach. is used, it is clear that in the absence of sufficient evidence establishing the identity of separate funds throughout the multiple investments and withdrawals, the asset in question must be deemed marital. Rahbaran, 26 Va.App. at 208-09, 494 S.E.2d at 141.
During the time in which the funds used to purchase the houses were placed in various bank and investment accounts, the parties continued to conduct withdrawal and deposit transactions on the accounts. The record contains numerous gaps in recording the simultaneous and sequential uses of the funds husband seeks to trace. The evidence showed that husband contributed the claimed $20,000 to the first marital home in Wheeling, Illinois. Similarly, wife contributed the proceeds of the sale of her separate townhouse to the purchase of the Wheeling house. The parties subsequently placed the proceeds of the sale of the Wheeling home into an account along with the parties’ paychecks, and subsequently invested a portion of the money from the account in a home in Freeland, Michigan. The record does not reveal what proportion of the money in the account represented the proceeds of the Wheeling home, and what proportion represented the parties’ paychecks. When the parties sold the house in Freeland, Michigan, unspecified proceeds of the sale went into an account identified as a predecessor to the parties’ Merrill Lynch Cash Management Account (CMA), which also contained an unknown amount of other marital funds. The parties moved to London, England, and then back to Connecticut. Upon their return to the United States, the parties used a portion of the money in the parties’ CMA to purchase a house in Westport, Connecticut. The record does not establish the proportion of money in the CMA which represents the proceeds of the sale of the Freeland home.
The parties sold the Westport house and used at least some of the proceeds to buy a house in McLean, Virginia, the precise amount of which was not established at trial. During the same time period, the parties also owned a house in Bloomfield, Michigan, although it is unclear what funds were *534 used to purchase the Bloomfield house. The parties sold both the McLean and Bloomfield houses, and used proceeds in the amount of $500,000 as a down payment on the Richmond, Virginia home owned at the time of separation.
Thus, the record makes clear that husband presented insufficient evidence from which the court could determine the identity of his separate funds, and distinguish them from the marital property in the hybrid asset, viz., the parties’ last house in Richmond. Therefore, “ ‘the unknown amount contributed from the separate source transmutes by commingling and becomes marital property.’ ” Rahbaran, 26 Va.App. at 208-09, 494 S.E.2d at 141 (quoting Turner, supra, at 268); see also Minter v. Minter, 111 N.C.App. 321, 432 S.E.2d 720, 725 (1993) (holding that party did not carry his burden to trace transactions made on a marital account).
Applying the same tracing principles to the classification of wife’s contribution, we hold that wife’s evidence of tracing does not support the court’s award to her in the amount of $20,061.[3] The evidence revealed, and the commissioner noted, that wife contributed $20,061 of the $50,061 credit to pay unspecified “marital bills.” The evidence fails to establish that wife contributed these funds toward the value of an identifiable asset, or to the acquisition of an identifiable asset. In short, wife has not pointed to any separate or hybrid asset owned at the time of separation to which she claims the $20,061 of her separate funds may be traced. Accordingly, the trial court erred in identifying this portion of *535 wife’s contribution as separate. Rahbaran, 26 Va.App. at 208, 494 S.E.2d at 141.
III.
Equitable Distribution Award
The trial court affirmed the commissioner’s rulings on the issue of equitable distribution, and issued a final decree setting out the terms of the equitable distribution. Husband contends that the commissioner and court erred in their consideration of the statutory factors.
A commissioner’s findings of fact which have been accepted by the trial court “are presumed to be correct when reviewed on appeal and are to be given ‘great weight’ by this Court. The findings will not be reversed on appeal unless plainly wrong.” Rowe, 24 Va.App. at 140, 480 S.E.2d at 768 (citations omitted). The amount and form of any equitable distribution award “are matters committed to the sound discretion of the trial court, [but] ‘any division or award must be based on the parties’ equities, rights and interests in the property.’ ” Theismann v. Theismann, 22 Va.App. 557, 565, 471 S.E.2d 809, 812 (1996) (quoting Alphin v. Alphin, 15 Va.App. 395, 403, 424 S.E.2d 572, 577 (1992)), aff'd, 23 Va.App. 697, 479 S.E.2d 534 (1996) (en banc) (mem.). In fashioning an equitable distribution award, the trial court must consider each of the statutory factors, but may determine what weight to assign to each of them. Booth v. Booth, 7 Va.App. 22, 28, 371 S.E.2d 569, 573 (1988). In challenging the court’s decision on appeal, the party seeking reversal bears the burden to demonstrate error on the part of the trial court. D'Agnese v. D'Agnese, 22 Va.App. 147, 153, 468 S.E.2d 140, 143 (1996) (citing Lutes v. Alexander, 14 Va.App. 1075, 1077, 421 S.E.2d 857, 859 (1992)).
A.
Consideration of Husband’s Support for Former Spouse and for Wife’s Children
Husband contends that the trial court erred in giving consideration to his use of at least $50,000 of marital funds to *536 make court-ordered support payments to a former spouse. Husband also contends that the court failed to consider his support for wife’s children during the marriage.
Husband brought approximately $50,250 in intangible personal property into the marriage. Husband argued that he should receive a greater portion of the intangible property than the principal owned at the time of marriage because of the earning record of the funds, while wife argued that husband’s share of the intangible property should be reduced by the spousal support paid by husband to his former wife during the marriage, which totalled more than $50,000. The trial court found that the funds husband brought into the marriage were transmuted by commingling into marital property, and could not be treated as his separate property as they could not be traced to a current asset. Thus, in fashioning a monetary award which reflected this contribution, the trial court was guided by the statutory factors for equitable distribution of marital property set forth in Code § 20-107.3(E). In considering the statutory factors, the court, inter alia, balanced husband’s monetary contributions to the marriage against his use of marital funds to support his former spouse, and awarded husband $44,856 for the intangible personal property, with the remainder of the assets divided equally.
The specific question to be addressed by this Court is whether the payment of separate debt with marital funds may be considered by the trial court as a factor in fashioning, an equitable distribution award. We hold that the court may, in the exercise of its discretion, consider payment of separate debt with marital funds in fashioning an equitable distribution award.
While the specific question husband raises is a matter of first impression in Virginia, the principles underlying its resolution are well established. It is beyond dispute that the trial court is required to consider all the factors set forth in Code § 20-107.3(E) in determining the amount of any monetary award and the division of marital property. See, e.g., Taylor v. Taylor, 5 Va.App. 436, 444, 364 S.E.2d 244, 249 *537 (1988). Code § 20-107.3(E)(2) requires the court to consider “[t]he contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of [the] marital property of the parties.” “[Circumstances that affect the [marital] partnership’s economic condition are factors that must be considered for purposes of our equitable distribution scheme.” Aster, 7 Va.App. at 5, 371 S.E.2d at 836. This Court has made clear that both affirmative and negative monetary contributions to the marital partnership are to be considered. See, e.g., O’Loughlin v. O’Loughlin, 20 Va.App. 522, 526, 458 S.E.2d 323, 325 (1995); Traylor v. Traylor, 19 Va.App. 761, 766, 454 S.E.2d 744, 747 (1995). Indeed, there appears to be general agreement with this principle. Turner, supra, at 565. Those contributions which impact on the value of the marital estate have been of particular concern to this Court. O’Loughlin, 20 Va.App. at 528, 458 S.E.2d at 326; Smith v. Smith, 18 Va.App. 427, 431, 444 S.E.2d 269, 273 (1994); Gamer v. Gamer, 16 Va.App. 335, 341, 429 S.E.2d 618, 623 (1993); Aster, 7 Va.App. at 5-6, 371 S.E.2d at 836. A court need not find waste in order to consider negative contributions in fashioning an equitable distribution award. See O’Loughlin, 20 Va.App. at 528, 458 S.E.2d at 326; cf. Booth, 7 Va.App. at 29, 371 S.E.2d at 573 (holding that unpaid attorneys’ fees constitute debt which the trial court properly considered in fashioning equitable distribution award although the debt was not waste).
In dual classification states such as Virginia, the use of marital funds for non-marital purposes can be considered as a factor in determining an equitable distribution award. Turner, supra, at 572. For example, where marital funds are used to pay the separate debts of one of the parties, a court may properly consider that fact as a negative monetary contribution to the marital property. Adams v. Adams, 115 N.C.App. 168, 443 S.E.2d 780, 781 (1994) (“A reduction in the separate debt of a party to a marriage, caused by the expenditure of marital funds ... is properly considered as a distributional factor.. -..”); Fenske v. Fenske, 542 N.W.2d 98, 102-03 (N.D.1996) (holding that trial court did not err in considering *538 husband’s premarital debts paid off during the marriage with commingled funds in the equitable distribution award). In addition, we have found that support obligations arising from a prior marriage may constitute such a separate debt. Hayes v. Hayes, 21 Va.App. 515, 519, 465 S.E.2d 590, 592 (1996) (finding that debt incurred to pay child support to a former spouse was separate debt); see Orlandi v. Orlandi, 23 Va.App. 21, 29, 473 S.E.2d 716, 720 (1996) (indicating that a new spouse is not required to support the other spouse’s children), reh’g en banc granted, appeal withdrawn (1996).
Based on Virginia’s statutory scheme and the cases which have applied it, we hold that the trial court could properly consider husband’s use of marital funds to pay his prior support obligations as a negative monetary contribution in fashioning its equitable distribution award. Accord Dobbyn v. Dobbyn, 57 Md.App. 662, 471 A.2d 1068, 1076-78 (1984); Jensen v. Jensen, 877 S.W.2d 131, 135 (Mo.Ct.App.1994); McGee v. McGee, 277 N.J.Super. 1, 648 A.2d 1128, 1133-34 (1994); Turner, supra, at 594.[4] This view is premised on the clear language of Code § 20-107.3(E) and the underlying legislative intent to allow the court to consider all contributions to the acquisition, care, and maintenance of the marital property, both positive and negative. See Code § 20-107.3(E)(2). Consideration of the use of marital funds to pay separate debt, such as support to a former spouse, properly falls under the trial court’s consideration of the statutory factors. As such, this case does not turn on the application of the doctrine of “waste.”[5] In short, under Virginia’s statutory *539 scheme, which encompasses broad directives to the trial court to consider the parties’ monetary and nonmonetary contributions to the marital estate, the trial court properly considered husband’s use of marital funds to pay support to his former spouse.
Husband also contends that the commissioner failed to consider his support for wife’s children by a prior marriage in determining the equitable distribution. After the parties married, they supported three of wife’s children and one of husband’s children in the marital home. The trial court concluded that the commissioner considered husband’s support of wife’s children under Code § 20-107.3(E)(10), the so-called “catchall” factor, notwithstanding the absence of any reference to the factor in the commissioner’s report.
The court could consider husband’s support for wife’s children pursuant to two statutory provisions: (1) as a “contribution[ ], monetary and nonmonetary, of each party to the well-being of the family”; and (2) as an “other factor[ ] as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.” Code § 20—107.3(E)(1), (10); accord Cox v. Cox, 882 P.2d 909, 920 (Alaska 1994) (citing Burcell v. Burcell, 713 P.2d 802, 805 (Alaska 1986)). Husband’s contribution to support for wife’s children, however, need only be considered under the factors outlined in Code § 20-107.3; he is not entitled to a dollar-for-dollar credit for contributions he may have made. See Ellington v. Ellington, 8 Va.App. 48, 56, 378 S.E.2d 626, 630 (1989). The commissioner heard evidence on husband’s support for wife’s children, and the trial court ruled that the commissioner had considered this factor. Husband does not point to any *540 evidence that this conclusion is unjustified or unsupported by the record, and we find none.
B.
Consideration of Fault
 Code §§ 20-107.1 and 20-107.3 require a court to consider “the circumstances and factors which contributed to the dissolution of the marriage,” including adultery, in determining an equitable distribution award. A party claiming adultery by the other party must prove it by clear and convincing evidence. Seemann v. Seemann, 233 Va. 290, 293, 355 S.E.2d 884, 886 (1987). Condonation of adultery nullifies the legal effect of the adultery, but “[c]ondoned adultery is revived where the guilty party resumes his association with his paramour.” Cutlip v. Cutlip, 8 Va.App. 618, 621, 383 S.E.2d 273, 275 (1989) (citing McKee v. McKee, 206 Va. 527, 532, 145 S.E.2d 163, 166 (1965)).
In Aster, 7 Va.App. at 5-6, 371 S.E.2d at 836-37, this Court held that a trial court must consider fault in terms of its economic impact on the marital estate. In O’Loughlin, 20 Va.App. at 528, 458 S.E.2d at 326, however, we held that a court may consider a party’s negative nonmonetary contributions to a marriage arising out of- his or her adultery regardless of its economic impact. We also “reaffirmed our holding in Aster that fault could not be used as a ‘wild card’ to justify an otherwise arbitrary award.” Theismann, 22 Va.App. at 569, 471 S.E.2d at 815 (citing O’Loughlin, 20 Va.App. at 528, 458 S.E.2d at 326).
The commissioner found that husband committed adultery during the marriage. The commissioner stated that he had considered the relevant statutory factors in fashioning the equitable distribution award, but did not explicitly rely on the finding of adultery in explaining the award. The trial court granted a divorce on the basis that the parties lived separate and apart for more than one year.
*541 After husband excepted to the commissioner’s finding, the trial court reviewed the issue of adultery. The court affirmed the commissioner’s finding, explaining the evidence supported the commissioner’s finding that “the earlier condonation was eliminated by later conduct even though the later affair may have extended to the time the parties had become separated.” The court also noted that the evidence supported a finding that “wife was reasonably suspect that relations with the first paramour had resumed, contributing to the dissolution of the marriage.” The court stated that although the adultery did not have direct economic impact, the commissioner could consider the adultery as a negative nonmonetary contribution to the marriage, “if indeed he did.”
Husband argues that the evidence showed that the evidence was insufficient to support a finding of uncondoned adultery and that the court should not have considered his adultery for economic impact or as a negative nonmonetary contribution. We do not reach the question of the sufficiency of the evidence because we conclude that the commissioner and trial court did not base their equitable distribution award on husband’s adultery. The commissioner and trial court both referred to the evidence of husband’s adultery, but did not explicitly base any distribution decision on husband’s adultery; upon noting that both parties had made nonmonetary contributions to the marriage, the commissioner merely mentioned that husband had committed adultery during the marriage. In turn, the trial court noted that the commissioner could consider husband’s adultery as a negative nonmonetary contribution under O’Loughlin, but expressed skepticism that the commissioner had actually done so.
In the absence of a specific finding by the commissioner or trial court that husband’s adultery affected the distribution of assets, we will not presume that the court improperly relied on husband’s adultery. See Pommerenke v. Pommerenke, 7 Va.App. 241, 251, 372 S.E.2d 630, 635 (1988) (“Viewing the totality of the evidence as it relates to other factors in Code § 20-107.3(E), we would be required to speculate to assign merit to [wife’s] argument. The trial court in fashioning the monetary *542 award certainly did not state that it was influenced by or attributed any particular weight to the fact that it found [wife] guilty of adultery.”). The brief mention of husband’s adultery among many other factors considered by the commissioner and court does not support an inference that the commissioner and trial court improperly relied on husband’s adultery, particularly in the absence of a specific, express finding that they did so. Id. Husband has not shown otherwise. See D’Agnese, 22 Va.App. at 153, 468 S.E.2d at 143 (citing Lutes, 14 Va.App. at 1077, 421 S.E.2d at 859) (explaining that the party seeking relief on appeal bears the burden to show reversible error).
Husband also argues that the court erred in adopting the commissioner’s finding that wife was without legal fault in the dissolution of the marriage. In order to constitute legal fault, marital cruelty “must be so serious that it makes the relationship intolerable or unendurable.” McLaughlin v. McLaughlin, 2 Va.App. 463, 467, 346 S.E.2d 535, 537 (1986) (citing Hoback v. Hoback, 208 Va. 432, 436, 158 S.E.2d 113, 116 (1967)). All of the evidence of marital cruelty came from husband, and wife and her three children all contradicted husband’s testimony. Under the governing standard of review, we find that the trial court resolved this conflict in the evidence in wife’s favor, and will not reverse the trial court’s determination. See Farley v. Farley, 9 Va.App. 326, 328, 387 S.E.2d 794, 795 (1990).
C.
Allocation and Consideration of Marital Debt
In determining an equitable distribution award, a court must consider the “debts and liabilities of each spouse [and] the basis for such debts and liabilities.” Code § 20-107.3(E)(7). Husband contends that the commissioner and trial court failed to properly consider the debt associated with the marital property known as Rochester Housing Associates Two Limited Partnership and the preparation of the parties’ joint 1992 tax return by DeLoitte & Touche. Husband introduced evidence that Rochester Housing Associates was en *543 cumbered by $22,400 in debt, which he reduced to $17,000 after the parties’ separation, and that he paid DeLoitte & Touche approximately $2,300 to prepare the parties’ joint 1992 tax return.
Husband’s argument is without merit. In allocating the marital liabilities, the commissioner found that husband should receive a credit of $44,856 against the intangible marital assets. In making this recommendation, the commissioner stated that, “[hjusband should not be allowed an offset for the Rochester Housing Associates account or the DeLoitte and Touche bill when making an accounting, the commissioner having already taken these into account in making an equitable distribution of the property.” Similarly, evidence of husband’s $5,400 payment to reduce the debt on the Rochester Housing Associates account was before the commissioner, and there is no reason to believe that the commissioner did not take the payment into account. The trial court addressed husband’s arguments, affirmed the commissioner, and noted that the commissioner properly resolved the conflicts in the evidence.
We find no basis in the record in support of husband’s contention that the court failed to consider husband’s debt. Husband is not entitled to a dollar-for-dollar credit for post-separation contributions made to the care, acquisition, or maintenance of marital property, von Raab, 26 Va.App. at 249-50, 494 S.E.2d at 161 (citing Ellington, 8 Va.App. at 56, 378 S.E.2d at 630). The court was not presented with an issue of valuation, in which debt must be fully considered in establishing value,[6] but rather with the issue of fashioning an equitable distribution award, in the exercise of its discretion after considering the statutory factors. See Booth, 7 Va.App. at 28, 371 S.E.2d at 573. Unless a party can show evidence to the contrary, we presume that the trial court properly applied the law to the facts. Bottoms v. Bottoms, 249 *544 Va. 410, 414, 457 S.E.2d 102, 105 (1995) (citing Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977)).
Because we find that the trial court improperly awarded a $20,061 credit to wife, we reverse its decision and remand so that the trial court may address the issue.

Affirmed, in part, and reversed in part.

. Wife has filed a motion to delete or disregard a portion of husband’s designation of the record for the appendix, alleging that a portion of the *526 appendix is improperly before this Court. Husband did not respond to this motion. Our review of the record supports wife’s allegations. Accordingly, we grant the motion and will not consider or rely upon the portion of the appendix that was improperly filed.

. It is important to note that two tracing issues are not presented by this case because they are not argued by the parties. Neither party claims that he or she is entitled to tracing of appreciation on separate assets. See Code § 20-107.3(A)(1); Mann v. Mann, 22 Va.App. 459, 464-65; 470 S.E.2d 605, 607-08 (1996); Lambert v. Lambert, 6 Va.App. 94, 104-05, 367 S.E.2d 184, 190-91 (1988). In addition, neither party addresses the gift provisions of the transmutation statute. See Code § 20-107.3(A)(3)(d)-(g); Lightburn v. Lightburn, 22 Va.App. 612, 616-17, 472 S.E.2d 281, 283 (1996); Theismann v. Theismann, 22 Va.App. 557, 578, 471 S.E.2d 809, 818 (1996) (Annunziata, J., concurring in part and dissenting in part), aff'd, 23 Va.App. 697, 479 S.E.2d 534 (1996) (en banc) (mem.).

. In an attempt to avoid the application of the tracing doctrine and its result, wife argues that the trial court awarded her a credit under equitable distribution principles, rather than applying tracing rules to determine her separate property under classification principles, citing Pommerenke v. Pommerenke, 7 Va.App. 241, 249, 372 S.E.2d 630, 634 (1988), in support. In Pommerenke, 7 Va.App. at 249, 372 S.E.2d at 634, we held, under a previous version of Code § 20-107.3(A), that "the restoration of a down payment made from separate property based on the application of the eleven factors of Code § 20-107.3(E), rather than the automatic restoration of such down payment, constitutes the proper application of the statute.” Our reading of the rulings of the commissioner and the trial court, however, reveals that the trial court applied tracing principles to both wife and husband.

. In Bliss v. Bliss, 127 Idaho 170, 898 P.2d 1081, 1083-84 (1995), the Supreme Court of Idaho held that a husband’s use of marital funds to pay attorney’s fees and a judgment from a prior divorce did not meet the requirements of the community property "reimbursement to the community” doctrine because the community funds "were used to pay [his] antenuptial, unsecured debts” rather than "used to enhance the value of [his] separate property,” and therefore fell outside the scope of the "reimbursement” doctrine.

. The doctrine of waste is implicated where a spouse dissipates assets "in anticipation of divorce or separation for a purpose unrelated to the *539 marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy.” Booth, 7 Va.App. at 27, 371 S.E.2d at 572. In Rosenfeld v. Rosenfeld, 597 So.2d 835, 837 (Fla.Dist.Ct.App.1992); and In re Marriage of Burgess, 568 N.W.2d 827, 828-29 (Iowa App. 1997), courts held that support payments to a former spouse do not constitute waste. We express no opinion on whether support payments to a former spouse might, in a proper case, constitute waste, as that issue is not before us.

. See, e.g., Trivett v. Trivett, 7 Va.App. 148, 151, 371 S.E.2d 560, 562 (1988) (holding that a valid debt secured by marital property reduces the value of the property by the amount of the debt).