138

# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Margaret C. Wilson

v.

Dana G. Wilson

September 10, 1998

Case No. CH97-550

BY JUDGE WILLIAM H. LEDBETTER, JR.

Grounds for divorce, child custody, support, and equitable distribution are disputed in this divorce suit.

## Background Facts

Mr. and Mrs. Wilson were married on 1974. Three children were born of the marriage: Tene, twenty-one years old; Anika, sixteen years old; and Aries, fifteen years old.

The parties separated on May 17, 1994, when Mrs. Wilson and the children moved out of the marital residence.

Shortly after the separation, the juvenile court awarded custody of the two youngest children to Mrs. Wilson. (By that time, Tene was in college.) That court also ordered Mr. Wilson to pay child support. Mr. Wilson appealed. This court heard the appeal on April 16, 1996, and revised Mr. Wilson's support to conform to the shared custody guidelines of Virginia Code § 20-108.2 because the minor children were with him more than 110 days a year. (The final order of this court was entered on January 10, 1997, concluding those appeals, ## CH94-447 through CH94-451, and # CH95-600.)

Meanwhile, Mrs. Wilson instituted this suit for divorce based on one-year separation. Mr. Wilson responded and filed a cross-bill alleging desertion. (Mr.

Wilson's answer and cross-bill were filed late, without objection, by leave of court. However, that matter was not memorialized in an order until May 8, 1998.) Mrs. Wilson answered the cross-bill.

The parties returned to the juvenile court on a petition filed by Mrs. Wilson. On August 4, 1997, the petition was denied and Mrs. Wilson appealed. That case (# CH97-550) is now consolidated with the divorce case for adjudication.

After discovery, the parties took depositions during April and May of 1998. The court held an ore tenus hearing on June 2, 1998, and took the case under advisement pending submission of memoranda. All memoranda now have been filed, and this opinion addresses all disputed issues.

## *Divorce*

The evidence establishes that Mr. and Mrs. Wilson have lived separate and apart, without interruption, since May 17, 1994. Therefore, Mrs. Wilson will be granted a divorce based on a separation exceeding one year pursuant to Virginia Code § 20-91(9).

Mr. Wilson's cross-bill based on desertion will be denied. While it is obvious that Mrs. Wilson left the marital home, it is also clear that she was justified in doing so. At the time of her departure, the parties led separate lives. Mr. Wilson had voluntarily left the parties' bedroom and was living in the basement; Mrs. Wilson had "re-done" the master bedroom; Mr. Wilson had taken over the family finances, and Mrs. Wilson, who was then employed as a real estate salesperson, maintained her own separate accounts; they rarely communicated; they engaged in few, if any, activities together; and they often argued in front of the children, a situation which distressed both parties. In sum, life in the marital residence had become intolerable by May of 1994.

Further, it is well settled that when multiple grounds for divorce exist, the trial court is not required to give precedence to one ground over another, and the trial judge can use discretion to select the appropriate ground upon which to grant the divorce. *Sargent v. Sargent*, 20 Va. App. 694 (1995). Under the circumstances of this case, a no-fault divorce should be awarded to Mrs. Wilson as prayed for in her bill.

## *Custody*

Custody of Tene is not in issue. She is an adult, attending college at the University of Maryland at Eastern Shore. When she is not at school, she lives with Mr. Wilson in the former marital residence.

Likewise, custody of Anika is not an issue. She lives with her mother in Breezewood Subdivision. She has expressed no interest in doing otherwise. Her custody is controlled by the 1995 juvenile court order. Mr. Wilson enjoys liberal visitation. In essence, Anika goes to her father's house whenever she wishes as long as it does not interfere with school and other activities.

Although custody of Aries was awarded to Mrs. Wilson in the same proceeding that resolved custody issues related to Anika, Aries voluntarily (and without much warning) moved to her father's house in December of 1997. She has resided there since that time, although she visits frequently with her mother.

Mrs. Wilson contends that Aries should be returned to her custody, even though she knows that Aries prefers the existing arrangement. Mrs. Wilson presented evidence that she is a more reliable disciplinarian; that Aries' school grades have dropped since she went to live with Mr. Wilson; that Aries attends church less frequently; that Mr. Wilson does not provide the proper "character training" and "structure"; and that his household is not wholesome.

In contrast, Mr. Wilson presented evidence that Aries' grades have improved since the downturn in early 1998; that he provides appropriate parental care for Aries; that his 68-year-old aunt, who lives with him, does not smoke throughout the house as Mrs. Wilson complains; that he does not leave sexually-explicit magazines in plain view and does not have other inappropriate material in the house; that he assists Aries with her school work and extracurricular activities; and that he provides financial support for her, as well as financial support for Tene and Anika.

Considering all of the evidence and the factors enumerated in Virginia Code § 20-124.3, the court is of the opinion that custody of Aries should be awarded jointly to Mr. and Mrs. Wilson, her primary residence to be with Mr. Wilson.

There is no doubt that Mrs. Wilson is a caring, loving, attentive mother and that she is sincere in her belief that she alone can better provide the necessary parental guidance and "structure" for Aries during her adolescence. Nevertheless, the evidence before the court establishes that Mr. Wilson, too, is a caring parent. There is nothing "unwholesome" or inappropriate about his home. It is the place where Aries grew up. It is located near Mrs. Wilson's and Anika's residence. It is the home of her older sister, Tene, when she is not away at college.

At the hearing on June 2, 1998, the trial judge met with Aries *in camera*, in the presence of counsel, consistent with procedures enunciated by the Court of Appeals. There can be no question about Aries' maturity, understanding,

experience, and intelligence, and the court finds that her preference is reasonable.

The present arrangement may appear to Mrs. Wilson to be too "lax." However, considering all the statutory factors, including Aries' preference, the court sees no reason whatever to alter the existing situation. What good possibly could come of a judicial mandate that Aries be required to return to her home, under the circumstances of this case?

For these reasons, custody of Aries will be jointly awarded to both parents, with her primary residence in the home of Mr. Wilson and with reasonable visitation to Mrs. Wilson.

### Visitation

No one has requested that the court structure a visitation schedule. Both Anika, who lives with Mrs. Wilson, and Aries, who lives with Mr. Wilson, are mature and reasonably responsible teenagers who visit back and forth and seem to have considerable affection for one another, both of their parents, and their older sister. Neither parent interferes with or obstructs this free flow of "visitations." Therefore, no court-ordered visitation schedule is necessary.

### Spousal Support

During the marriage, Mr. Wilson was the primary financial provider for the family. For most of that time, he worked as a forklift operator earning $25,000.00 to $27,000.00 a year. In most years, he also worked second jobs, as a carpenter, a store clerk, etc., supplementing that income. Mr. Wilson is fifty years old. He has a high school diploma and a number of college credits from Virginia Union and Germanna.

On August 16, 1995, approximately fifteen months after the separation, Mr. Wilson sustained serious injuries as the result of an automobile accident. He has not been gainfully employed since the accident. His disability is well documented.

Because of his disability, Mr. Wilson received disability payments from Prudential under his former employer's group disability policy. In 1997, he received $4,780.00 in disability payments.

On November 26, 1997, Mr. Wilson settled his personal injury claim for $195,000.00. After payment of attorney's fees, costs, and some outstanding medical bills, he received $98,000.00. At the time of the evidentiary hearing in this case, $83,000.00 remained.

Mrs. Wilson, 44, did not work outside the home until 1988. Since then she has worked in real estate sales. She has won awards for her achievements in sales. In 1995, her income after business deductions was $9,030.00; in 1996, $11,684.00; in 1997, $21,000.00. Mrs. Wilson is a high school graduate with a number of college credits. She holds a real estate sales license.

Mrs. Wilson acknowledges that Mr. Wilson sustained injuries in an automobile accident after the separation. Apparently, she acknowledges that he cannot return to his former job as an equipment operator, nor can he do construction work. Nevertheless, she contends that he should not be unemployed three years after the accident. Instead, she argues, he should have completed his vocational rehabilitation and obtained some form of employment by now. Therefore, she argues, the court should impute income to him or, in the alternative, treat his personal injury settlement proceeds as "income" because the settlement "included a recovery" of his lost wages.

Taking the last argument first, it is settled that a personal injury settlement is *not* income unless it is apportioned between income elements (lost earnings) and capital recoupment elements (medical expenses, loss of earning capacity, pain and suffering). Virginia Code § 20-108.2(C); *Whitaker v. Colbert*, 18 Va. App. 202 (1994). (Personal injury settlements are seldom if ever apportioned among the elements of damages, and jury verdicts are general verdicts in Virginia.) Here, Mr. Wilson's personal injury settlement was not apportioned. Therefore, Mrs. Wilson's contention that the settlement "included a recovery" of lost earnings from which the court can calculate support is without merit.

As for Mrs. Wilson's other argument regarding imputation of income, the court acknowledges that three years is a long rehabilitative period. On the other hand, Mr. Wilson has submitted uncontroverted evidence that he cannot return to his former job; that his former employer has no lighter work available for him; that he is not employable in any of the jobs that he is reasonably trained to perform "on the basis of age, education, past … work experience or physical capacity"; and that "it is going to take significant effort" for Mr. Wilson to secure "suitable work." (Mr. Wilson's Ex. # 3.) Vocational rehabilitation assistance has been recommended. Mr. Wilson has accepted that recommendation and is working as an apprentice for a real estate appraiser. He testified that his apprenticeship should be completed in about six months. Dr. Larry L. Sinsabaugh, a rehabilitation specialist, opines that Mr. Wilson's present earning capacity, without further training, is minimum wage.

Under a variety of circumstances, a court may impute income to one who normally would have a duty of support, based on that person's capacity to earn income and ability to pay rather than his or her actual income. *Hammers v. Hammers*, 216 Va. 30 (1975); *Edwards v. Lowry*, 232 Va. 110 (1986);

*Antonelli v. Antonelli*, 242 Va. 152 (1991). Even loss of employment is not justification for curtailment of one's support obligation if the loss is due to that person's own voluntary act, neglect, or wrongdoing.

Here, Mr. Wilson's loss of employment was necessitated by the debilitating injuries he sustained in August of 1995. Based on the record, this court cannot say that even a minimum wage should be imputed to him as long as he is properly engaged in a rehabilitation program that will train him for a meaningful job. Further, Mrs. Wilson has provided no evidence — other than her own opinion that three years is long enough — that Mr. Wilson is now capable or should be capable of earning wages as a real estate appraiser.

Finally, considering all of the factors enumerated in Virginia Code § 20-107.1, even if the court did impute a minimum wage and, in addition, factored interest on the proceeds of his settlement, to Mr. Wilson ($10,712.00 a year), Mrs. Wilson would not be entitled to spousal support because her earnings and earning capacity significantly exceed his.

Accordingly, Mrs. Wilson's request for spousal support will be denied.

### Child Support

A determination of child support always begins with a calculation of presumptive child support under the guidelines set forth in Virginia Code § 20-108.2.

Because of the court's award of custody of Aries, the split custody provisions of § 20-108.2(G)(2) apply. Based on the facts and circumstances of this case discussed above, it is apparent that neither party owes child support to the other.

Further, considering the factors listed in Virginia Code § 20-108.1, neither party owes child support to the other. For the reasons explained above, § 20-108.1(B)(3) does not apply.

Mr. Wilson heretofore has been ordered to maintain health insurance coverage for the two minor children. At the time of the original support order, he testified that the cost of such coverage was $125.00 a month. In this proceeding, he testified that the cost has increased to $400.00 per month. Nevertheless, he agrees that he should continue to provide health care coverage for Anika and Aries, and he will be ordered to do so. Uninsured medical expenses attributable to Anika and Aries shall be borne by the parties in equal shares.

## Equitable Distribution

Mr. and Mrs. Wilson were married twenty years prior to their separation. During that time, they acquired various assets and incurred marital debts. At this juncture, however, it appears that the marital home and Mr. Wilson's retirement benefits are the primary matters in dispute.

Property acquired during the marriage and prior to the parties' separation is presumed to be marital. The classifications are described in Virginia Code § 20-107.3(A).

### A. *Retirement Benefits*

Mr. Wilson had retirement benefits from his former employment, valued at $9,222.00 at the time the parties separated. It is unclear from the evidence whether any of these funds exists today. Most or all of the funds were drawn down and used by Mr. Wilson for post-separation living expenses.

Mrs. Wilson contends that Mr. Wilson wasted or dissipated his retirement benefits because he did not need to use them. In the alternative, she says that such use of the retirement funds constitutes a "negative monetary contribution," *Barker v. Barker*, 27 Va. App. 519 (1998), and should be considered by the court in fashioning a monetary award.

*Barker* involved use of marital funds for payment of separate debt, a support obligation to a former spouse. In contrast, Mr. Wilson's expenditure of his retirement benefits was for living expenses incurred during his period of disability. Even if his use of these marital funds during his disability could be treated as a "negative monetary contribution" under these circumstances, the impact would be *de minimis* for reasons hereinafter explained.

The doctrine of waste is not implicated. Waste is defined as a dissipation of assets in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy. *Booth v. Booth*, 7 Va. App. 22 (1988); see also Swisher, Diehl, and Cottrell, *Virginia Family Law*, § 11-36 (2d ed. 1997). As noted above, these funds were expended for living costs during Mr. Wilson's disability arising out of his 1995 automobile accident. There is no suggestion that he spent any of the money on vacations abroad, unnecessary purchases of capital items, or that he otherwise squandered the funds.

Finally, even if a portion of those retirement funds still exists, the court is of the opinion that Mrs. Wilson should not receive any part of the marital share of the funds, considering all of the factors enumerated in § 20-107.3(E) and the distribution award made below.

## B. *Marital Residence*

The marital residence on Oak Grove Drive, now the residence of Mr. Wilson and two of the children, is marital property. It is jointly owned.

Mrs. Wilson's expert valued the property at $77,000.00. Further, the expert opined that the "adjusted value" associated with repairs needed to market the property is $75,500.00. Mr. Wilson's assessment of the property's value was $69,000.00.

Based on the evidence, the court is of the opinion that the fair market value of the marital residence is $75,500.00. The balance owed on the mortgage is $26,500.00. Therefore, the property has a net equity value of $49,000.00.

Because Mr. Wilson has occupied the marital home since the separation, Mrs. Wilson argues that he should be charged with post-separation rent. She also contends that Mr. Wilson should be charged with the cost of repairs that her appraiser says are necessary to market the property. In response, Mr. Wilson claims a credit or reimbursement for post-separation mortgage payments as well as for expenses such as taxes and insurance. Further, he says that he has committed no waste and has maintained the property in good condition except for normal wear and tear.

Generally, courts give consideration to these types of "post-separation events." Where one spouse has exclusive use of the residence during pendency of the divorce, deduction of a fair rental value from the occupying spouse's share has been held to be proper. Similarly, courts have provided credits to a spouse for post-separation payments to maintain the value of marital property and for mortgage payments. Even when a dollar-for-dollar approach is rejected, the courts hold that such matters should be "a factor" to consider in making equitable distribution. Similarly, as discussed above, the doctrine of waste is recognized in equitable distribution, so that a party in sole possession of marital property can be charged with the diminution of value of the property if it is the result of unexplained neglect or fault. See Swisher et al., *Virginia Family Law, supra*, § 11-31.

The evidence involving these matters need not be repeated here. Mr. Wilson has been in exclusive possession of the marital residence since the separation. He also has made all of the mortgage payments on the property and has maintained the value of the home insofar as his income and physical disability have permitted. He has provided a home for the oldest child and, since December 1997, for Aries.

Considering the rental value of the property as well as the mortgage payments made by Mr. Wilson since the separation, it is obvious that the two offset one another.

It is also obvious that Mr. Wilson has not committed or allowed waste to such a degree that he should be charged with any diminution of value.

Considering all of the factors in subsection E of § 20-107.3, the court is of the opinion that the residence should be transferred to Mr. Wilson, that he should assume the indebtedness secured by the property, and that he should pay Mrs. Wilson as a monetary award the sum of $24,500.00. Virginia Code § 20-107.3(C). Mr. Wilson will bear the expense of preparation and recordation of an assumption deed.

## C. *Tangible Personal Property*

The parties have agreed to the division of their tangible personal property as set forth on lists submitted in evidence. Exhibit # 5. The court has received no values regarding these items; therefore, the agreed division of these assets cannot be considered by the court, nor has the court been asked to consider the value of those assets, in its distribution award under § 20-107.3.

## D. *Mr. Wilson's Personal Injury Settlement*

Although Mrs. Wilson claims a portion of Mr. Wilson's personal injury settlement upon various theories, it appears that she does not contend that the settlement proceeds are marital property under § 20-107.3. Nevertheless, to put that issue to rest, the court observes again that the accident occurred fifteen months after the parties' separation and the settlement was realized more than three years after the parties' separation. Therefore, it is obvious that § 20-107.3(A)(3), (C), and (H) do not apply because no part of these proceeds is marital property.

### *Rules to Show Cause*

Two rules to show cause have issued in this proceeding. In one, Mrs. Wilson contends that Mr. Wilson is in violation of the court's order requiring him to maintain health insurance for the minor children. In the other, Mrs. Wilson contends that Mr. Wilson violated the custody order by allowing Aries to live with him since December of 1997.

It is clear that the health care coverage lapsed on one if not two occasions. Difficulties in converting Mr. Wilson's employer-provided health insurance

pursuant to COBRA are indicated. However, it is also apparent that Mr. Wilson could have expended more energy and effort to resolve the matter, and he could have been more candid with Mrs. Wilson and the court about the coverage. On the other hand, for more than eight months now, he has provided proper coverage and has paid premiums far in excess of the amount contemplated in the original support order.

During the time that no insurance coverage was available, Mrs. Wilson incurred $980.62 in medical bills for Aries and Anika. Mr. Wilson will reimburse Mrs. Wilson for all those expenses, and by doing so within thirty days from the final decree, he will have purged himself of any contempt with regard to health care coverage.

As for Aries' change of residence, the court is of the opinion that Mr. Wilson has not deliberately or willfully violated the custody order. There is no evidence that he enticed Aries to move to his home or that he participated in any way in her decision. As discussed above, she made the decision herself and continues that preference to this day. She is a mature and responsible fifteen-year-old. Therefore, that rule will be dismissed.

### *"Lost" Child Support*

Mrs. Wilson asserts that Mr. Wilson's child support obligations should be recalculated as a result of his personal injury settlement. She reasons that his support obligation would have been higher than it was if he had been employed; that the personal injury settlement compensated him for lost earnings, i.e., pre-accident wages; therefore, the settlement proceeds are akin to deferred income for which one is taxed when actually received.

The argument, though creative, is not persuasive. The settlement was not apportioned, so there is no way to calculate a lost earnings component. See *Whitaker v. Colbert, supra.*

### *Fees and Costs*

Each party will bear his or her attorney's fees and costs expended in the case.