## CIRCUIT COURT OF FAIRFAX COUNTY

Yuko Medvigy

 v.

Christopher A. Medvigy

January 14, 2002

Case No. (Chancery) 167781

BY JUDGE R. TERRENCE NEY

The parties appeared before the Court on January 2, 2002, for an Equitable Distribution hearing.

Prior to the hearing, the parties reached agreement on most of the property issues. The Court, however, did hear argument on and took under advisement the following question: whether speculative stock purchases made by one party with marital funds, which resulted in losses, amount to "waste" or negative non-monetary contributions which should be charged against the purchasing party's interest in the parties' marital assets? It is assumed for the purposes of this opinion that the purchases were made without the knowledge of the other spouse.

Ms. Medvigy asserts that Mr. Medvigy "wasted" $14,472.00 of the couple's assets[1] by engaging in speculative stock market investments. Mr. Medvigy replies that he did make the unfortunate trades that resulted in the losses but that he did so in order to earn funds for the family. Mr. Medvigy testified that had the investments resulted in a profit, then he would have shared the profits equally with his wife. (Virginia law suggests that he would have no choice other than to do so.) The asset was marital property. He argues that the losses should be shared equally as well.

---

[1] The assets were funds available through a home equity line of credit.

The home equity line was in the approximate amount of $28,000.00. Both parties had executed the deed of trust to secure the credit line prior to the time of their separation. Ms. Medvigy testified that she believed the line to be for "home improvements." Mr. Medvigy did not contradict that statement, but he did state that he was the one who took care of financial details. He said that it was not Ms. Medvigy's "inclination to know details" about financial matters.

· Mr. Medvigy further testified that he believed that Ms. Medvigy was aware of his stock trading and that she was "in the same room when I was doing so." It appears undisputed, however, that Ms. Medvigy did not know of the $25,000.00 draw on the home equity line and that she learned of it after she had obtained exclusive use of the marital home.

When the trading took place, the parties were living in the same house. Ms. Medvigy lived in the basement and Mr. Medvigy and the parties' children lived upstairs. Although the parties ultimately separated when Mr. Medvigy moved out of the marital residence, in December 2000, at the time the stock purchases took place it was not clear from the evidence[2] that they took place "at a time when the marriage was undergoing an irreconcilable breakdown" and that the losses occurred "in anticipation of the divorce or separation." *Barker v. Barker*, 27 Va. App. 519, 500 S.E.2d 240 (1998).

For waste to occur, one spouse must spend marital funds on a "purpose unrelated to the marriage." *Barker v. Barker*, 27 Va. App. 519, 500 S.E.2d 240 (1998). Here, Mr. Medvigy's uncontradicted testimony was that he was trading, as he had done on prior occasions, in order to raise money to use for marital purposes. He said that he was compelled to do so because he had suffered a decrease in his income by transferring to a desk position with the Department of State in order to be able to spend more time with the couple's children.

Only one reported Virginia case has made reference to failed speculative stock market ventures as amounting to waste. *Booth v. Booth*, 7 Va. App. 22, 371 S.E.2d 569 (1988).[3] While there may be circumstances where such activities might amount to waste,[4] here, given the fact that any profits from the trades would plainly have been marital property and given the fact that the explanation for the trading was to provide for the family, it does not appear proper to the Court to treat these losses as waste. Any failed investment

---

[2] This Court has heard aspects of this matter at three separate hearings.

[3] In *Booth*, the Court of Appeals observed that the trial court found that $60,000 were wasted when lost in a speculative stock market venture. That ruling of the trial court was not challenged on appeal.

[4] A dissipation of marital assets by gambling for example.

undertaken by one spouse without the knowledge of the other, regardless of the good faith of the investing party, could be challenged as waste or, at the very least, a negative non-monetary contribution to the marriage. Neither result is compelled by the facts presented here.

As a result, the debt of $14,472.00 is a joint obligation of both parties.

In light of the Court's ruling as to the substantive issue presented, it is unnecessary to consider further the applicable date of separation. Even assuming that the stock speculation took place post separation, however, the result is the same. The asset was marital, its use was intended to be for both spouses, or at least the family's, benefit, and the purpose was related to the marriage or, at least, to the circumstances of the marriage at the time the trading occurred.